844 So.2d 664 (2003)
Maria HERRERA and Catherine Herrera, Appellants,
v.
C.A. SEGUROS CATATUMBO, a foreign corporation, Appellee.
No. 3D02-2175.
District Court of Appeal of Florida, Third District.
April 2, 2003.
Rehearing Denied May 14, 2003.
*665 Hardeman & Associates and Richard A. Warren, Miami, for appellants.
Schreiber Rodon-Alvarez and Gerhardt A. Schreiber, for appellee.
Before COPE and WELLS, JJ., and NESBITT, Senior Judge.
PER CURIAM.
Maria and Catherine Herrera appeal a final judgment denying their Motion for Supplemental Declaratory Relief against Appellee, C.A. Seguros Catatumbo. For the following reasons, we reverse.
In a related action, the Herreras filed suit against a Venezuelan airline, Zuliana de Aviation, for intentional infliction of emotional distress, negligence, and false imprisonment. All three claims stemmed from a verbal altercation between the Herreras and the airline's personnel at the point of embarkation, following which the Herreras were removed from Zuliana's airplane during a scheduled stop-over and strip/cavity searched. The facts are more fully set forth in Zuliana de Aviation v. Herrera, 763 So.2d 499 (Fla. 3d DCA 2000).
While this action was pending, Catatumbo, the airline's insurance carrier, which had initially denied coverage, undertook the airline's defense under a reservation of rights.
In March 1999, a jury returned a general verdict in the Herreras' favor on all three claims. Specifically, the jury awarded $60,000 to Maria Herrera and $110,000 to Catherine Herrera in compensatory damages without allocating a specific dollar amount to any of the three claims. The jury also awarded $1,000,000 in punitive damages to the Herreras. These awards were affirmed on appeal. See id.
In the meantime, the Herreras brought the instant declaratory judgment action against Catatumbo seeking a declaration regarding coverage. In July 1999, the trial court issued a declaratory judgment stating that Catatumbo's policy covered bodily injuries and death to passengers arising from accidents and negligence by the airline, but not malicious acts.
The Herreras then sought to amend the final judgment in the related action against the airline to add Catatumbo as an additional defendant pursuant to section 627.4136(4), Florida Statutes (1999), and to obligate Catatumbo to pay the judgment rendered against the airline. The trial court granted the motion, and judgment was entered against Catatumbo. On appeal, this court reversed for procedural reasons, without prejudice for the Herreras to file an application for supplemental relief in the declaratory judgment action. See C.A. Seguros Catatumbo v. Herrera, 812 So.2d 576, 578 (Fla. 3d DCA 2002).
The Herreras subsequently filed a Motion for Supplemental Declaratory Relief in the instant action, seeking a declaration that the subject insurance policy covered the jury's verdict against the airline. Catatumbo argued below that its policy with the airline would not afford coverage for the incident at issue. The trial court, reviewing the event and the policy, ultimately agreed with Catatumbo and denied the supplementary relief sought. Based on the following analysis, we cannot agree.
Initially, we observe that issues pertaining to insurance coverage present questions of law subject to de novo review. See Allstate Ins. Co. v. Rush, 777 So.2d 1027, 1029 (Fla. 4th DCA 2000).
*666 Catatumbo advances here a number of theories as to why it should not be compelled to pay for the damages suffered by the Herreras. Specifically, it argues: 1) the Herreras were not passengers and therefore the policy afforded them no coverage; 2) no bodily injury occurred under the terms of the policy; 3) the event that caused the injuries was not an accident and therefore not covered by the policy; 4) the actions of the airline's employees were malicious and therefore not covered under the terms of the policy; and 5) because some of the theories advanced by the Herreras might have afforded them coverage and some would not, the failure to differentiate the claims properly resulted in a denial of coverage. Having reviewed each of the claims made by Catatumbo, we reject the no coverage claim.
I. THE HERRERAS WERE COVERED THIRD PARTIES
The liability policy issued by Catatumbo covers Zuliana for bodily injuries incurred by both passengers and third parties arising from accidents:
LIABILITY FOR BODILY INJURY TO PASSENGERS OR FOR THEIR DEATH
Under this coverage, the Company [Catatumbo] undertakes to take charge of any payment derived from the Insured's [Zuliana's] extracontractual Liability for bodily injury to passengers, or for their death, resulting from an accident....
* * * *
LIABILITY FOR BODILY INJURY TO THIRD PARTIES, OR FOR THEIR DEATH (EXCLUDING PASSENGERS).
Under this coverage, the Company [Catatumbo] undertakes to take charge of any payment derived from the Insured's [Zuliana's] extracontractual Liability for bodily injury to third parties, or for their death ... resulting from an accident....
Thus, although Catatumbo argues here that there is no coverage because the Herreras were not passengers after they were removed from the aircraft and placed in a terminal bathroom where they were cavity searched,[1] Catatumbo may still be liable to them as "third parties."
II. THE HERRERAS SUFFERED BODILY INJURIES
Bodily injury under this policy is defined as "any illness or loss of health that may result as a direct and sole consequence of [a] bodily injury." In the initial action against Zuliana, the Herreras alleged that they had suffered both physical and emotional injury. In that action, the Herreras testified that they had endured substantial pain when the individual who conducted the cavity searches inserted her entire hand, covered by a rag, into their vaginal cavities. They also testified as to their subsequent loss of health as a direct consequence of these physical intrusions. Specifically, Maria testified that she suffered from headaches and an inability to sleep as a consequence of the search, and testimony confirmed that Catherine became depressed and withdrawn and ultimately suffered a nervous breakdown.
Under the facts of this case, the Herreras sufficiently demonstrated that they suffered a "bodily injury" under the policy. See Ruttger Hotel Corp. v. Wagner, 691 So.2d 1177, 1178 (Fla. 3d DCA 1997)(to recover damages for emotional distress caused by a defendant's negligence, the *667 impact rule requires that the emotional distress flow from physical injuries).
III. THE INSTANT INCIDENT WAS AN ACCIDENT
The injuries sustained by the Herreras also resulted from an "accident" under the policy. The policy, while purporting to define this term, in actuality does not:
"ACCIDENT": The term "accident," whenever it appears in the text of this Policy, means any accident ... provided that such damage [injury] has been caused accidentally....
Recently, the Florida Supreme Court held that "where the term `accident' in a liability policy is not defined, the term, being susceptible to varying interpretations, encompasses not only `accidental events,' but also injuries or damages neither expected nor intended from the standpoint of the insured." State Farm Fire & Cas. Co. v. CTC Dev. Corp., 720 So.2d 1072, 1076 (Fla.1998). As the Supreme Court explained, under this formulation, "if the resulting damages are unintended, the resulting damage is `accidental even though the original acts were intentional.' " Id. at 1075; see also McCreary v. Florida Residential Prop. & Cas. Joint Underwriting Ass'n, 758 So.2d 692, 694 (Fla. 4th DCA 1999); Sunshine Birds & Supplies, Inc. v. U.S. Fid. & Guar. Co., 696 So.2d 907, 910 (Fla. 3d DCA 1997) (concluding that an accident is "an unfortunate event resulting from carelessness, unawareness, ignorance, or a combination of causes").
While there is evidence that airline employees intentionally had the Herreras removed from the aircraft and either asked that they be searched or failed to object to the body searches, there is no evidence that the employees had them removed for the purpose of subjecting them to cavity searches or for the purpose of subjecting them to physical harm. While having them removed and permitting the searches was, as alleged by the Herreras and found by the jury, negligent, it also was an "accident" under Catatumbo's policy.
IV. THE JURY'S AWARDS ARE NOT EXCLUDED BY THE POLICY
Catatumbo argues that the Herreras cannot recover any damages whatsoever under the policy, compensatory or punitive, on any of their claims, because the Catatumbo/Zuliana policy contains an exclusionary provision disallowing coverage for malicious acts. In the underlying action the Herreras advanced three theories for recovery: intentional infliction of emotional distress; negligence; and false imprisonment. The insurer argues that it should be relieved of all liability because malice is inherent in all three of these counts and alternatively because the general verdict returned on these three claims precludes a determination of applicability of the malicious acts exclusion to one or possibly two of these three claims. We do not agree with either proposition.
Malicious behavior was not implicit in all three of the Herreras' theories of recovery. There was no specific finding below that the airline acted in a malicious manner, and the jury found the airline liable on the negligence count for failing to protect the Herreras from a physical search, a count in which malice neither had to be, nor was, alleged. See, e.g., Florida Power & Light Co. v. Lively, 465 So.2d 1270, 1273 (Fla. 3d DCA 1985) (stating the essential elements of negligence as duty, breach of duty, legal cause and damage). Malice was not, therefore, implicit all three counts.
Malice also was not implicit in the punitive damage awards. The Florida standard *668 jury instruction on punitive damages was given in this case. That instruction authorizes a punitive damage award where the defendant is guilty of either intentional misconduct or gross negligence. See Standard Jury Instructions Civil Cases, No. 96-1, 689 So.2d 1042, 1044 (Fla.1997); § 768.72(2), Fla. Stat. (2001). Under this standard, malice did not have to be alleged or demonstrated to obtain a punitive damage award on any count alleged. Neither the negligence claim, nor any damage award stemming from it, were excluded from coverage by the policy's malicious acts provision.
The general verdict returned on the Herreras' three claims also does not preclude recovery. Because the entire amount awarded to the Herreras may have been awarded on the negligence claim, a claim for which the malicious acts exclusion was inapplicable, we need go no further to affirm the order under review. See Morrison v. Hugger, 369 So.2d 614, 615 (Fla. 2d DCA 1979)("Because the facts are susceptible to a version which would fully support the insurance coverage and because there is no way to tell upon which basis the jury rendered its verdict ... the judgment ... must fall on the insurance company.")
Case law confirms that while an insured or beneficiary carries the burden of proving coverage under a policy, the insurer bears the burden of proving applicability of a claimed policy exclusion. See U.S. Concrete Pipe Co. v. Bould, 437 So.2d 1061, 1065 (Fla.1983) ("burden of proving an avoidance ... since it comes within a specific exclusion contained in the policy is upon the insurer"); Assurance Generale de France v. Cathcart, 756 So.2d 1055 (Fla. 4th DCA 2000)(concluding that insurer of a fishing vessel, that one insured intentionally tried to sink, had the burden of demonstrating that the conduct of another insured fell within an exclusion from coverage once a covered loss was shown); New York Life Ins. Co. v. Coll, 568 So.2d 1306 (Fla. 3d DCA 1990); Allstate Ins. Co. v. Coin-O-Mat, Inc., 202 So.2d 598 (Fla. 1st DCA 1967)(concluding that insurer whose policy included coverage against vandalism and malicious mischief to contents of insured's automatic coin-operated laundry had the burden of proving that loss came under some exclusionary clause of the policy); 1 Lee R. Russ, Couch on Insurance 3d, § 254:12 (1997)("The insurer bears the burden of proving the applicability of policy exclusions and limitations or other types of affirmative defenses, in order to avoid an adverse judgment after the insured has sustained its burden and made its prima facie case.")(Footnotes omitted). Thus the burden falls on the insurer to take those steps which would allow consideration of an exclusionary provision.
In Bould, the Florida Supreme Court explained that where, as here, the issue is whether the entire claim is beyond coverage, the burden falls on the insurer to obtain a verdict from which it may be determined that there is no coverage. Bould, 437 So.2d at 1065; see also Morrison, 369 So.2d at 616 (confirming that where any single claim will support coverage, the insurer's failure to obtain a verdict segregating the damage awards amongst the claims, mandates payment of the entire damage award).
In the instant case, Catatumbo, aware of the terms of its own policy, made no effort to have the final disposition result in a verdict that would provide a basis for consideration of the exclusionary clause. The Herreras are, therefore, entitled to recover the unsegregated damage awards on all three of it claims.
V. CONCLUSION
Upon careful review of the record, and consideration of each of the theories under *669 which the insurer claims its policy with the airline did not afford these parties coverage, we find that the insurer's arguments fail. Accordingly, the final order denying the Herreras' Motion for Supplemental Declaratory Relief is reversed and this cause remanded with directions to award compensatory and punitive damages under Catatumbo's insurance policy to the Herreras to the full extent awarded by the jury.
NOTES
[1] The term "passenger" is defined in this policy as "any person aboard the aircraft or who is boarding the same for the purpose of travelling [sic] on the same or is descending after a flight or attempted flight...."