**TRAVELERS INDEMNITY COMPANY OF ILLINOIS,**
Plaintiff,

v.

**ROYAL OAK ENTERPRISES, INC., a foreign corporation; Dan Swearingen, an individual; and John V. Tilton, Sr., as Personal Representative of the Estate of John V. Tilton Jr., deceased, Defendants.**

No. 5:02–cv–58–Oc–10GRJ.

United States District Court, M.D. Florida, Ocala Division.

Oct. 13, 2004.

**1360**

Andrew Edward Grigsby, Sina Bahado-ran, Hinshaw & Culbertson, Miami, FL, for Plaintiff.

Daniel James King, Barry Goheen, King & Spalding, Atlanta, GA, Jona J. Miller, King & Spalding, Sarasota, FL, William Harper Phelan, Jr., Bond, Arnett, Phelan, Smith & Craggs, P.A., Ocala, FL, for Defendants.

### *ORDER*

HODGES, District Judge.

This insurance coverage dispute is before the Court for consideration of the

Parties' cross-motions for summary judgment (Docs. 161 & 170).[1] The Plaintiff, Travelers Indemnity Company of Illinois ("Travelers"), seeks a declaration that a wrongful death action against its insured, Royal Oak Enterprises, Inc. ("Royal Oak"), presented no covered claims, and further seeks recoupment from Royal Oak of the $750,000.00 it paid to settle the litigation. Royal Oak counterclaims, seeking a declaration that coverage was provided under the policy of insurance and demanding reimbursement of the reasonable fees and costs of counsel it independently retained to assist in the defense of the wrongful death action. For the reasons that follow, summary judgment is due to be granted in favor of both Parties, in part, disposing of some issues and narrowing the remaining issues to be tried.

### Background and Facts

This action arises out of a tragic incident that occurred in Ocala, Florida in 1998 at a processing plant owned and operated by Defendant Royal Oak, a manufacturer of charcoal briquettes. At that time, decedent John V. Tilton, Jr. was employed by Royal Oak as a furnace helper in its Ocala facility. As a furnace helper, Mr. Tilton's duties included working in and near the electrical panel of the facility's hammer mill, a machine that grinds charred wood into dust for the manufacture of charcoal briquettes. On August 30, 1998, Mr. Tilton inadvertently came into contact with the electrical panel of the hammer mill, which resulted in his electrocution and his death.

At the time of the incident causing Mr. Tilton's death, Royal Oak was insured by Travelers under a "Workers Compensation and Employers Liability" policy.[2] The Employers Liability Insurance portion of that policy, which is the only part at issue here, covers damages that Royal Oak must pay because of bodily injury (including death) to an employee by accident arising out of and in the course of the employee's employment. The insurance does not cover "bodily injury intentionally caused or aggravated" by the insured. The pertinent provisions of the policy read as follows:

**A. How This Insurance Applies**

This employers liability insurance applies to bodily injury by accident or bodily Injury by disease. Bodily injury includes resulting death.

1. The bodily injury must arise out of and in the course of the injured employee's employment by you.

. . .

**B. We Will Pay**

We will pay all sums you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance.

. . .

**C. Exclusions**

This insurance does not cover:

. . .

1. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). Travelers is an Illinois corporation with its principal place of business in Illinois. Royal Oak is a Delaware corporation with its principal place of business in Georgia.

2. Doc. 32, exh. C. Royal Oak was also insured under two other policies issued by Travelers—a general liability policy and an umbrella policy. The Parties agree that these policies do not provide coverage for the Tilton action. See Doc. 199. Only the "Workers Compensation and Employers Liability" policy is in dispute here. As the name suggests, this policy contains two parts—the Workers Compensation Insurance part and the Employers Liability Insurance part. The Parties further agree that only the Employers Liability Insurance part is at issue.

5. bodily injury intentionally caused or aggravated by you;

. . .

### D. We Will Defend

We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance. We have the right to investigate and settle these claims, proceedings and suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. We have no duty to defend or continue defending after we have paid our applicable limit of liability under this insurance.[3]

In July 2000, the personal representative of Mr. Tilton's estate brought a wrongful death action in Circuit Court In Marion County, Florida against Royal Oak.[4] The wrongful death complaint was initially framed in one count, which alleged that Mr. Tilton's death was the result of Royal Oak's negligent conduct. Upon notification by Royal Oak, Travelers undertook the defense of the action and appointed Mr. Wayne Argo, Esq. of the law firm of Weiner & Argo, P.A. as counsel for Royal Oak. Royal Oak believed Weiner & Argo, a two-attorney firm, was too small to handle the case and voiced some objection, but acquiesced in the representation.

In November of 2000, Mr. Argo received a proposal from the Tilton estate, offering to settle the case for $750,000.00, an amount within the limits of coverage under the Travelers policies. Mr. Argo communicated the settlement proposal to Paul McAllister, the newly appointed Vice President of Royal Oak's Ocala facility where the death occurred. In February of 2001, only days before the settlement offer was due to expire, the Tilton estate notified Mr. Argo of its Intent to move for leave to amend its complaint to add a prayer for punitive damages. Mr. Argo did not communicate this information to Royal Oak, but instead informed the Travelers' claims administrator that the motion, if filed, would likely be granted. Shortly thereafter, Travelers permitted the first settlement offer to lapse.

The Tilton estate eventually filed its motion to amend the complaint in June of 2001.[5] Attached to the motion was a proposed amended complaint containing, in addition to the original negligence count, a prayer for punitive damages and a second count framed as an intentional tort.[6] The intentional tort claim was based on allegations that the defendants' conduct was "objectively substantially certain to cause injury or death." [7]

Under Florida law, which supplies the substantive law of this diversity case,[8] negligence actions brought by an employee (or his estate) against an employer for injuries sustained during the course of employment are barred by workers' compensation im-

---

3. Doc. 32, exh. C, part 2.

4. The Tilton estate also sued Dan Swearingen, the former Vice President of Royal Oak's Ocala facility.

5. Doc. 199.

6. Doc. 32, exh. A.

7. According to the amended complaint, the U.S. Department of Labor had previously cited Royal Oak for electrical hazards at the Royal Oak plant in Branson, Missouri. The amended complaint further alleged that Mr. Tilton's death was not the first fatal electrocution at the Ocala facility. A similar deadly event occurred in 1990, when a Royal Oak employee came into contact with exposed and unguarded electrical components. The Tilton estate maintained that these events and others establish that Royal Oak knew or should have known that the dangerous condition at the Ocala facility was substantially certain to result in bodily injury to Mr. Tilton.

8. *See* Doc. 140.

munity.[9] However, intentional torts, including allegations that the employer engaged in conduct "substantially certain to result in injury or death," do not fall within workers' compensation immunity.[10]

Upon examining the proposed amended complaint, Travelers concluded that the allegations in the intentional tort count fell outside of the coverage provided by its policies. On August 6, 2001, Travelers sent Royal Oak a "Reservation of Rights Letter" stating that it would continue to defend the action under a reservation of its right to contest coverage.[11] The letter also set forth the grounds on which Travelers based its conclusion, specifically that the Employers Liability Insurance policy covers only accidents and excludes "bodily injury intentionally caused or aggravated" by the insured and that, further, punitive damages are not insurable as a matter of public policy. With respect to its continued representation in the matter, Travelers wrote:

"Subject to this full and complete reservation or rights under its policies of insurance, Travelers has previously appointed the law firm of Weiner & Argo, P.A., to defend your interests in this matter. The assigned counsel will defend you in regard to all Counts in this action so long as some covered Counts remain. We elicit your participation in the selection of counsel, and will assume that the previously assigned counsel is mutually agreeable to you if you do not notify us to the contrary in writing within ten (10) days.

"You have the right to engage, at your own expense, personal counsel to advise and represent you regarding the matters that we believe are not covered under the policy. If your counsel has any questions concerning any of the matters raised in this letter, we will be glad to address them further." [12]

Royal Oak responded to the reservation of rights letter on August 17, 2001, stating: "Royal Oak continues to have significant concerns over Travelers' selection of Weiner & Argo to defend this matter. First, Travelers did not provide Royal Oak with a meaningful opportunity to provide input into the selection of independent counsel to defend it In this matter. Second, Royal Oak is concerned that the two-person firm of Weiner & Argo, acting alone, lacks the necessary resources to render an adequate defense of Royal Oak in this litigation. Third, Royal Oak is concerned that plaintiff's [first] offer of settlement was rejected or allowed to expire by Travelers without Royal Oak being provided any meaningful opportunity to comment on or participate in the discussions concerning that offer of settlement. These and other examples have led Royal Oak to conclude that Weiner & Argo may not be sufficiently 'independent' to provide an effective defense of Royal Oak in this litigation, nor is that firm 'mutually agreeable' to Royal Oak.

"Accordingly, to supplement Weiner & Argo, Royal Oak has retained King & Spalding as independent counsel to represent it in its defense of this matter. This letter will serve as notice that Royal Oak reserves all available rights to which it is entitled under Florida (or other applicable) law in its retention of King & Spalding, including, but not lim-

---

9. § 440.11, Fla. Stat. (2002). Mr. Argo was aware of this defense and asserted it in the defendants' answer. For strategic reasons, however, he chose not to make this defense the subject of a motion to dismiss. Doc. 168, Deposition of Wayne Argo, Esq., at p. 24.

10. *Turner v. PCR, Inc.,* 754 So.2d 683 (Fla. 2000).

11. Doc. 171, exh. M; Doc. 161, exh. G.

12. *Id.*

ited to, its right to seek from Travelers reimbursement of reasonable fees incurred by King & Spalding in its defense of Royal Oak in this matter due to Travelers' failure to comply with applicable provisions of Florida law concerning its retention of 'mutually agreeable counsel' to defend Royal Oak in this matter." [13]

Deposition testimony reveals that in response to Royal Oak's letter, Travelers suggested several other Florida law firms located in the surrounding Ocala area that could undertake the defense of the Tilton action instead of Atlanta-based, King & Spalding.[14] Royal Oak rejected the alternative firms offered by Travelers.[15] Though Royal Oak asserts that there never was a "meeting of the minds" on the issue of Royal Oak's representation, the matter was "dropped" [16] after Travelers agreed to pay 75% of the fees and expenses of a King & Spalding attorney to be associated as co-counsel with Mr. Argo.[17]

Meanwhile, the trial court granted the Tilton estate's motion to amend and permitted the amended complaint to be filed. Shortly thereafter, in March of 2002, Travelers initiated this action for declaratory judgment against Royal Oak and the Tilton estate.[18] During the pendency of this action, the Tilton litigation was settled within policy limits for $750,000.00, and that sum was paid to the Tilton estate by Travelers. The settlement agreement states that the settlement proceeds represent "compensatory damages" and serve as consideration for the Tilton estate's release of "all claims" set forth in the wrongful death action.[19] Importantly, the settlement papers did not allocate the settlement proceeds to the separate counts or claims in the complaint; it was a lump sum settlement.

It is Travelers' position in this case that no covered claims were alleged in the Tilton litigation. Travelers' amended complaint (Doc. 32) seeks a declaration to this effect [20] and requests that this Court enter judgment in its favor and against Royal Oak for the $750,000.00 it paid to settle the Tilton action together with all attorney fees and costs expended to defend Royal Oak, with interest. Royal Oak filed a counterclaim (Doc. 120), seeking a declaration that the claims in the Tilton litigation were fully covered and that it is entitled to reimbursement of the reasonable fees and costs of its independently retained counsel.

### Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

---

13. Doc. 161, exh. F.

14. Doc. 165, Deposition of Jay Matulewski, at p. 124–26.

15. Doc. 166, Deposition of Robert S. Lockett, III (Vice President and Chief Financial Officer of Royal Oak), at p. 39–40.

16. *Id.* at p. 69.

17. Doc. 161, exh. F, letter dated February 22, 2002. In addition to reimbursement for the fees and costs incurred for the services of King & Spalding, Royal Oak seeks reimbursement for fees and costs of another law firm,

Fisher & Phillips, also retained by Royal Oak to assist in the litigation.

18. The claims against Defendant Swearingen were later dismissed per stipulation. Doc. 151.

19. Doc. 171, exh. P.

20. Travelers also sought a declaration that punitive damages were not recoverable as a matter of law. This issue is not longer in dispute.

of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." [21] As the Supreme Court held in *Celotex Corp. v. Catrett,* the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact.[22] If the movant is successful on this score, the burden of production shifts to the nonmoving party who must then come forward with "sufficient evidence of every element that he or she must prove." [23] The nonmoving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.

### Discussion

### A. The Duty to Defend

It is well settled in Florida, that a liability insurer's duty to defend third-party claims against its insured is distinct from, and broader than, its duty to indemnify.[24] Whether the duty to defend arises depends solely on the allegations contained in the complaint against the insured,[25] and any doubt about the duty to defend must be resolved in favor of the insured.[26] Moreover, if the complaint alleges covered and non-covered claims, the insurer's duty to defend is triggered and the insurer is obligated to defend the entire suit.[27] This is true even where the facts later show there is no coverage.[28] The insurer's duty to defend is not affected by the merits of the third party's claim or the likelihood that the claim will ultimately be successful; an insured is entitled to a defense by its insurer against even the most frivolous suit, so long as it describes an occurrence within coverage.[29]

■ At all times during the pendency of the Tilton litigation the operative complaint alleged that Royal Oak's negligence brought about Mr. Tilton's accidental death. The allegedly negligent acts or omissions included Royal Oak's failure to make the hammer mill's electrical panel safe, its failure to warn Mr. Tilton of the danger posed by the panel, and its failure to train Mr. Tilton to recognize and avoid electrical hazards. These factual allegations bring the Tilton action squarely within the coverage provided under the Employers Liability Insurance, which covers liability for the bodily injury or death of employees by accident arising out of or during the course of the employment.

---

**21.** *Samples on Behalf of Samples v. Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988).

**22.** 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**23.** *Rollins v. TechSouth,* 833 F.2d 1525, 1528 (11th Cir.1987).

**24.** *See, e.g., Allstate Ins. Co. v. RJT Enter., Inc.,* 692 So.2d 142, 144 (Fla.1997).

**25.** *Trizec Prop., Inc. v. Biltmore Constr. Co.,* 767 F.2d 810, 811 (11th Cir.1985) (applying Florida law).

**26.** *MCO Envtl., Inc. v. Agric. Excess & Surplus Ins. Co.,* 689 So.2d 1114, 1115 (Fla. 3d DCA 1997).

**27.** *Id.* at 1116; *Grissom v. Commercial Union Ins. Co.,* 610 So.2d 1299, 1307 (Fla. 1st DCA 1992).

**28.** *Klaesen Bros., Inc. v. Harbor Ins. Co.,* 410 So.2d 611 (Fla. 4th DCA 1982).

**29.** *Burton v. State Farm Mut. Auto. Ins. Co.,* 335 F.2d 317, 323 (5th Cir.1964) (applying Florida law); *State Farm Fire & Cas. Co. v. Tippett,* 864 So.2d 31 (Fla. 4th DCA 2003) ("[T]he insurer has a duty to defend even if the facts alleged are false or the legal theories unsound.").

Further, nothing on the face of the original or amended complaint reveals the applicability of a policy exclusion. That this negligence claim may well have been subject to the *affirmative defense* supplied by Florida's workers' compensation law does not relieve Travelers of the duty to come forward and at least raise that defense.[30] Therefore, based solely on the allegations against Royal Oak, the duty to defend was triggered, and Travelers was obligated to defend the entire complaint, including the intentional tort claim, regardless of whether that claim alone would have triggered the duty to defend.[31] Accordingly, Travelers is not entitled to reimbursement for the costs it incurred in defending Royal Oak.

### B. The Duty to Indemnify

■ While the duty to defend is broad and must be determined solely by the allegations in the complaint against the insured, the duty to indemnify is more narrow and must be measured by the facts adduced at trial or developed through discovery taken during the underlying tort action.[32] Therefore, notwithstanding the allegations against the insured, if the facts show that the insured's liability stems from a claim for which no coverage is provided under the policy, the insurer owes no duty of indemnification. This premise holds true even where, as here, the insured's liability was arrived at through a settlement of the action against the insured, because a settlement does not, by itself, obligate the insurer to pay for a non-covered claim. Instead, the insurer's duty to indemnify a settlement obligation must be measured by the facts "inherent in the settlement" or, in other words, the facts extant at the time the settlement was reached.[33]

■ This case is unusual procedurally because it is an action for indemnity seeking recoupment of funds paid by the insurer, rather than an action for indemnity brought by the insured under the policy of insurance. It is also somewhat unusual in that the dispute involves a pretrial settlement of the claims made against the insured, rather than a jury verdict resolving issues of both liability and damages. In this instance, therefore, as plaintiff, Travelers would have the burden of proof that the sums it seeks to recoup were either not covered by its policy of insurance or were excluded by application of a policy exclusion.[34] However, because the tort action

---

**30.** Whether or not the negligence claim was barred by Florida's workers' compensation immunity is entirely irrelevant to whether Travelers owed a duty to defend against it. *Burton,* 335 F.2d at 323 ("[I]t should now be clear that the duty of defense has nothing at all to do with whether the suits are intrinsically meritorious or not."); *Allstate Ins. Co. v. Travers,* 703 F.Supp. 911, 913 (N.D.Fla.1988) ("Potential defenses or denials of allegations in the complaint are not relevant for determining whether the insurer has a duty to defend.").

**31.** Travelers' senior claims handler, Jay Matulewski, concedes that the Tilton estate's original complaint was covered by the policy and subject to no exclusion. Doc. 165, tab 2, Deposition of Jay Matulewski, at 111–16. He admits that Travelers did not attempt to reserve its rights with respect to count one, the negligence count.

**32.** *Farrer v. U.S. Fid. & Guar., Co.,* 809 So.2d 85, 88 (Fla. 4th DCA 2002).

**33.** *Hatmaker v. Liberty Mut. Fire Ins. Co.,* 308 F.Supp.2d 1308, 1313 (M.D.Fla.2004) (Conway, J.). *See also Bankwest v. Fid. & Deposit Co. of Md.,* 63 F.3d 974, 981 (10th Cir.1995); *Travelers Ins. Co. v. Waltham Indus. Labs. Corp.,* 883 F.2d 1092, 1099 (1st Cir.1989).

**34.** *See, e.g., Herrera v. C.A. Seguros Catatumbo,* 844 So.2d 664, 668 (Fla. 3d DCA 2003); *Metro. Dade County v. Fla. Aviation Fueling Co.,* 578 So.2d 296, 298 (Fla. 3d DCA 1991) ("the party seeking indemnification has the burden to show that the settlement, or portions thereof, fell within the coverage of the indemnity clause") (citing *Keller Indus., Inc.*

was settled by Travelers, it would be sufficient if Travelers proved that the disputed claim was a viable claim having settlement value.[35] Stated another way, Travelers would not have to prove that the disputed claim was or could have been easily established by the claimant as a matter of both fact and law. If Travelers carries its burden of persuasion that a portion of the settlement was properly attributable to a viable claim not covered under the policy or which was excluded by the policy, it must then carry the burden of persuasion concerning the portion of the settlement to be allocated to that claim.

■ The general insuring clause of the Employers Liability Insurance policy insures Royal Oak against liability for the death of its employees occurring by "accident," but does not define that term.[36] The definition must therefore be supplied by case law. An "accident," according to the Florida Supreme Court, "encompasses not only 'accidental events,' but also injuries or damage neither expected nor intended from the standpoint of the insured." [37] The undisputed facts surrounding Mr. Tilton's death are that Mr. Tilton was fatally electrocuted when he inadvertently came into contact with live electrical terminals while attempting to restart the machine he was operating. The record before the Court reveals little else about this tragic event, and there is, consequently, no evidence to suggest that Royal Oak "expected" or "intended" Mr. Tilton's death. That the negligence action was subject to a legal affirmative defense—i.e., workers' compensation immunity—as opposed to a factual defense, has no bearing on the resolution of the in-

demnity question which must be determined by the application of the factual circumstances to the terms of the policy. It is therefore Travelers' burden to show the applicability of a policy exclusion to the facts of the case.

■ The Employers Liability Insurance policy excludes from coverage liability for injuries "intentionally caused or aggravated" by Royal Oak. In attempting to carry its burden of establishing the applicability of this provision, Travelers confuses the duty to defend with the duty to indemnify. Instead of producing *facts* from which the applicability of the exclusion can be determined, Travelers relies solely on selected *allegations* in the Tilton amended complaint. The Tilton estate, in an effort to avoid workers' compensation immunity as a defense to its claim against Royal Oak, amended its complaint to assert an "intentional" tort founded on largely the same factual allegations supporting the negligence claim but with the additional assertion that Royal Oak's conduct was "substantially certain to result in injury or death" as opposed to being merely negligent. Such a claim, if established, "imputes intent upon employers in circumstances where injury or death is objectively, 'substantially certain' to occur" and is sufficient to avoid the workers compensation immunity.[38] Travelers argues that liability for conduct "substantially certain to result in injury or death" would also fall within the policy exclusion for injuries "intentionally caused or aggravated" by the insured. Thus, rather than pierce the pleadings, Travelers would have the Court resolve the duty to

v. *Employers Mut. Liab. Ins. Co. of Wis.*, 429 So.2d 779 (Fla. 3d DCA 1983)).

**35.** *Fla. Aviation Fueling Co.*, 578 So.2d at 299 n. 4.

**36.** Doc. 32, exh. C, part 2, A.

**37.** *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So.2d 1072, 1076 (Fla.1998).

**38.** *Turner v. PCR, Inc.*, 754 So.2d 683, 691 (Fla.2000).

indemnify on the allegations alone. This would be error.

Whether Travelers is correct in its interpretation of the intentional conduct exclusion will soon be decided by the Florida Supreme Court.[39] However, this Court need not reach this interesting question at this stage of the case because the issue here is Travelers' duty to indemnify, and this duty is not determined by mere allegations but by the facts underlying the Tilton action. The liability insurer's duty to indemnify should not be determined by how a party chooses to frame its legal claims to redress, but by which theory of recovery is supported by the facts, particularly where, as here, the legal claims are mutually exclusive—i.e., Royal Oak acted either negligently or intentionally. Having failed to produce any facts supporting a conclusion that Mr. Tilton's death was "intentionally caused or aggravated" by Royal Oak, Travelers has not yet sustained its burden of showing the applicability of the coverage exclusion.

That is, more specifically, that Travelers has not yet sustained its burden of showing that the intentional tort claim brought by the Tilton estate against Royal Oak was a viable or non-frivolous claim in fact and law so as to have settlement value. Because the case is pending on motions for summary judgment, however, the Court is uncertain that final disposition is appropriate in the absence of a full opportunity for Travelers to produce evidence, if it can do so, beyond the mere allegations of the Tilton estate's complaint, sufficient to demonstrate the existence of a viable claim under Florida law for an intentional tort or its functional equivalent. Should Travelers sustain that burden, it would then have the burden of establishing the proper allocation to be made of the settlement fund, i.e., what portion of the settlement amount should be attributed to the resolution of the claim of an intentional tort.

## C. Royal Oak's Counterclaim

In its counterclaim, Royal Oak seeks reimbursement from Travelers of the fees and costs incurred in retaining "independent" counsel (King & Spalding and Fisher & Phillips) to supplement counsel provided by Travelers. King & Spalding entered the case shortly after Travelers issued its reservation of rights letter disclaiming coverage of the intentional tort claim and prayer for punitive damages. Fisher & Phillips became involved with the case in some capacity after King & Spalding's entry. Counsel supplied by Travelers, Mr. Argo, of Weiner & Argo, remained as counsel of record for Royal Oak throughout the litigation, sharing his research with independently retained counsel, conducting depositions, and coordinating discovery matters. King & Spalding often drafted documents for Mr. Argo to sign and file with the court on behalf of Royal Oak. In short, Mr. Argo and independently retained counsel worked together for Royal Oak's defense, often sharing resources.

Royal Oak submits three reasons to support its claim that Travelers should bear the fees and costs of Royal Oak's independently retained counsel: (1) the defense provided by Travelers was so inadequate that it "forced" Royal Oak to retain its own attorneys; (2) Travelers offered to defend only under a reservation of its right to deny coverage; and (3) a conflict of interest existed between Travelers and Royal Oak such that Travelers was obligated to pay for counsel of Royal Oak's choosing. The Court will consider each in turn.

---

**39.** The Florida Supreme Court recently accepted jurisdiction to answer the certified questions posed by the Eleventh Circuit in *Travelers Indem. Co. v. PCR, Inc.*, 326 F.3d 1190 (11th Cir.2003).

## 1. Inadequate Defense

■ Royal Oak argues that Travelers is obligated to pay for the fees and costs of its independently retained counsel because Travelers breached its duty to defend by providing an inadequate defense. Under Florida law, to satisfy its duty to defend, the insurer must provide an adequate defense.[40] If the insurer acts negligently in carrying out its duty to defend, its conduct constitutes a breach of contract, entitling the insured to recover all damages naturally flowing from the breach.[41] If the insured is able to establish that the defense provided by the insurer was inadequate and that "it was reasonable for [the insured] to engage the services of its own attorneys, [the insured] will be entitled to recover all reasonable costs and attorneys' fees incurred at the trial level."[42] But an insurer "is not required to pay the insured's expenses unless the actions of the insurer have 'forced' the insured to engage its own attorneys."[43] If in fact "the attorneys hired by [the insurer] were adequately defending the lawsuit, [the insured] will not be entitled to recover the costs and attorneys' fees incurred at the trial level."[44]

Royal Oak has not produced evidence creating a genuine issue of fact as to whether it was "forced" to retain its own attorneys due to inadequate representation by appointed counsel. Royal Oak points to only two instances which it claims demonstrate the inadequacy of Weiner & Argo's defense: (1) Mr. Argo did not adequately inform Royal Oak's upper management or legal staff of the first settlement offer, and (2) Mr. Argo failed to notify Royal Oak when he learned of the Tilton estate's intent to move to amend the complaint. First, it is undisputed that Mr. Argo communicated the initial settlement offer to the Vice President of the Ocala facility, Mr. Paul McAllister, who up to that time had been the point person at Royal Oak for the litigation and was actively participating in the defense. If Mr. McAllister was not Royal Oak's preferred contact person, as he was held out to be, then Royal Oak should have notified Travelers at that time. Second, it is undisputed that Mr. Argo informed Royal Oak when the Tilton estate actually moved to amend its complaint and also suggested to Mr. McAllister that he contact someone at Royal Oak's headquarters. More importantly, there is no evidence that Mr. Argo's actions in any way prejudiced the defense of the Tilton litigation. Indeed, the case ultimately settled within policy limits. Accordingly, Royal Oak is not entitled to reimbursement for the costs and fees of its independently retained counsel on the basis of having received an inadequate defense.

## 2. Defense Under a Reservation of Rights

■ It is well recognized in Florida that where an insurer wrongfully refuses to provide any defense at all, the insurer is liable for the reasonable attorney's fees and other expenses incurred in defending

---

**40.** *Carrousel Concessions, Inc. v. Fla. Ins. Guar., Ass'n*, 483 So.2d 513, 516 (Fla. 3d DCA 1986).

**41.** *Id.*

**42.** *Id.* at 517.

**43.** *Id.*

**44.** *Id.* It appears that the Third District Court of Appeal of Florida has tacitly receded from its holding in *Carrousel Concessions.* In *Aet-* na Cas. & Sur. Co. v. Protective Nat'l Ins. Co., 631 So.2d 305 (Fla. 3d DCA 1993), the court held that an insurer may not be held vicariously liable for the malpractice of the attorney it selects to defend the insured. This Court need not reconcile the two cases because Royal Oak has failed to create a genuine issue of fact as to whether the defense provided by Travelers was inadequate.

the action as damages for the breach.[45] It is also well settled that an insurer does not breach its duty to defend by offering to defend only under a reservation of rights.[46] However, when an insurer offers to defend under a reservation of rights, Florida law provides that the insured may, at its election, reject the defense and retain its own attorneys without jeopardizing its right to seek indemnification from the insurer for liability.[47] One Florida court, however, has held that an insured was entitled to reimbursement of fees and costs as well as other damages without first rejecting the insurer's offer to defend under a reservation of rights.[48] Because Royal Oak places some measure of reliance on this case, *Nationwide Mutual Fire Insurance Company v. Beville*,[49] and because the Court concludes that *Beville* deviates from the trend in Florida law, the Court will consider the case in greater detail.

In *Beville*, the insured, a citrus farmer, was sued by its former citrus labor contractor for various violations of federal and state labor laws. The insured waited six months after the suit was filed to notify the insurer and request a defense. The insurer offered to defend but only under a reservation of rights to deny coverage on the basis of the insured's untimely notice of the claim. The insurer also agreed to reimburse the insured for the costs of the defense incurred by the insured prior to the time notification was received. The case was ultimately settled, the insurer

paying damages to the plaintiff. The insured then sued the insurer for full reimbursement of its fees and costs of independent counsel. The Florida Fourth District Court of Appeal affirmed the trial court's determination in favor of the insured. Citing *Taylor v. Safeco Insurance Company*, the court held:

> "[A] carrier's unilateral defense under a reservation of rights is similar to a refusal to provide any defense at all in its effect on the insured. In either case, the carrier has violated its duties under the policy unconditionally to defend and indemnify its insured within specified limits. The consequence of that violation is that the carrier has transferred to its insured the power to conduct the defense of the claim against its insured." [50]

The *Beville* court also found support in the Claims Administration Statute, § 627.426(2), Florida Statutes,[51] which provides that a liability insurer shall not be permitted to raise a coverage defense— e.g., the lack of timely notice—without fist obtaining either a "nonwaiver" agreement or furnishing "mutually acceptable counsel."

*Beville* is not controlling. First, it is distinguishable on the basis that the Claims Administration Statute has no applicability to the case *sub judice*. That statute is concerned only with "coverage defenses," which, as defined by the Florida

---

**45.** *See, e.g., Fla. Ins. Guar. Ass'n, Inc. v. All the Way with Bill Vernay, Inc.*, 864 So.2d 1126, 1129 (Fla. 2d DCA 2003).

**46.** *See, e.g., Giffen Roofing Co. v. DHS Developers, Inc.*, 442 So.2d 396, 396–97 (Fla. 5th DCA 1983).

**47.** *Taylor v. Safeco Ins. Co.*, 361 So.2d 743, 745–46 (Fla. 1st DCA 1978).

**48.** *Nationwide Mut. Fire Ins. Co. v. Beville*, 825 So.2d 999 (Fla. 4th DCA 2002).

**49.** *Id.*

**50.** *Id.* at 1003.

**51.** Section 627.426(2) provides, in relevant part, that an insurer "shall not be permitted to deny coverage based on a particular coverage defense unless: 'the insurer timely sends a reservation of rights letter and either (a) notifies the insured of its refusal to defend, (b) obtains a non-waiver agreement, or (c) retains independent counsel which is mutually agreeable to the parties.'"

Supreme Court, consist of defenses "to coverage that otherwise exists" and do not include Travelers' defense that coverage for the Tilton litigation would not exist in any case.[52] Second, the penalty for a violation of the Claims Administration Statute is not an award of attorney's fees and costs, as the *Beville* court suggests, but the preclusion of "coverage defenses."[53] Third, a defense under a reservation of rights, by itself, is not a breach of the duty to defend.[54] Fourth, neither *Taylor v. Safeco* nor any other Florida case stands for the proposition that an insured may recover attorney's fees and costs after rejecting a defense under a reservation of rights. *Taylor v. Safeco* held only that the insured would not jeopardize the right to seek indemnification if it did so.[55] And fifth, even if fees and costs are appropriate where an insured rejects a defense under a reservation of rights, the insured must ac-

tually *reject* that defense,[56] which was not done in *Beville,* nor here for that matter. Accordingly, this Court concludes that *Beville* does not control the disposition of Royal Oak's counterclaim[57] and that Royal Oak is not entitled to reimbursement for the fees and costs of independently retained counsel simply because Travelers offered to defend only under a reservation of its right to contest coverage.[58]

### 3. Conflict of Interest

Finally, Royal Oak contends that a conflict of interest between it and Travelers obligated Travelers to pay for counsel of Royal Oak's choosing. According to Royal Oak, a conflict of interest arose between the parties when the Tilton estate moved to amend its complaint to assert the intentional tort claim and prayer for punitive damages which prompted Travelers to reserve its right to deny coverage. Whether a conflict of interest between the insurer

---

**52.** *AIU Ins. Co. v. Block Marina Inv., Inc.,* 544 So.2d 998, 1000 (Fla.1989).

**53.** *Fans & Stoves of Jacksonville, Inc. v. Aetna Cas. & Sur. Co.,* 549 So.2d 1178 (Fla. 1st DCA 1989).

**54.** *Giffen Roofing Co.,* 442 So.2d at 397.

**55.** *See Am. Home Assur. Co. v. Glenn Estess & Assocs., Inc.,* 763 F.2d 1237, 1240 (11th Cir. 1985) (applying similar Alabama law and holding that an insured is not entitled to reimbursement of fees and costs of independent counsel where it rejects the defense offered under a reservation of rights).

**56.** *Giffen Roofing Co.,* 442 So.2d at 397.

**57.** The Court is bound by intermediate Florida appellate decisions, absent a strong showing that the Florida Supreme Court would decide the issue differently. *Maseda v. Honda Motor Co.,* 861 F.2d 1248, 1257 n. 14 (11th Cir.1988); *Silverberg v. Paine, Webber, Jackson & Curtis, Inc.,* 710 F.2d 678, 690 (11th Cir.1983) ("A federal court applying state law is bound to adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest

court would decide the issue otherwise."). The Court is aware that the Florida Supreme Court declined to exercise its discretionary, "conflict" jurisdiction to review *Beville.* This does not suggest, however, that *Beville* is not in conflict or that the Florida Supreme Court would not have decided otherwise had it exercised its discretion to review the case.

**58.** The Eleventh Circuit's decision in *American Family Life Assurance Co. v. United States Fire Co.,* 885 F.2d 826 (11th Cir.1989), is not to the contrary. In that case, the court held that an insured was entitled to reimbursement for the fees and costs of counsel it retained to monitor the defense provided by the insurer. Rather than provide a defense under a reservation of rights, as Travelers has done here, the insurer in that case denied coverage but agreed to supply a defense. The court, applying Georgia law, reasoned, "Where an insured hires co-counsel instead of rejecting the defense offered by the insurance company after an insurance company denies coverage but offers to provide a defense, it does not seem to us misplaced to put the burden on the insurance company to choose between denying a defense and providing a defense in cooperation with co-counsel retained by the insured." *Id.* at 831–82.

and its insured entitles the insured to select counsel of its choice to supplement or monitor the defense at the expense of the insurer is apparently an issue of first impression for Florida courts. In the absence of controlling authority, the Court must make an "educated guess" as to how the Florida Supreme Court would decide.[59]

Having surveyed Florida law on this subject (see above) and having found no clear answer, the Court will turn to the law of other jurisdictions for instruction. Several other jurisdictions have considered the issue and reached divergent views. It appears that many courts recognize that a conflict of interest, sufficient to warrant the insured's retention of its own counsel at the expense of the insurer, arises where the insurer is called upon to defend an action against its insured seeking punitive damages or alleging mutually exclusive theories of liability, only one of which, but not all, present a covered claim.[60] The most common instance of such a conflict is where, as is the case here, the third party's complaint alleges that the insured's

conduct was either negligent or, alternatively, intentional; the former being covered and the latter potentially excluded by the standard intentional tort exclusion. The Eighth Circuit Court of Appeal in *United States Fidelity & Guaranty Co. v. Louis A. Roser, Co.* described the nature of this conflict:

> "Common logic dictates that in such circumstances, counsel for [the insurer] would be inclined, albeit acting in good faith, to bend his efforts, however unconsciously, toward establishing that any recovery by [the third party] would be grounded on the theory of [the] claim which was not covered by the policy."[61]

*Louis A. Roser, Co.* is factually distinguishable from the instant case because the trial court there consolidated the liability claim with the coverage dispute and counsel appointed to defend the insured from liability was simultaneously representing the insurer in the coverage dispute. Nevertheless, some courts have held that the fact that the coverage dispute

---

**59.** *Shapiro v. Associated Intern. Ins. Co.,* 899 F.2d 1116, 1118–19 (11th Cir.1990); *Trail Builders Supply Co. v. Reagan,* 409 F.2d 1059, 1061 (5th Cir.1969).

**60.** *Fireman's Fund Ins. Co. v. Waste Mgmt. of Wis., Inc.,* 777 F.2d 366 (7th Cir.1985) (applying Wisconsin law); *Previews, Inc. v. Cal. Union Ins. Co.,* 640 F.2d 1026 (9th Cir.1981) (applying California law); *United States Fid. & Guar. Co. v. Louis A. Roser, Inc.,* 585 F.2d 932 (8th Cir.1978) (applying the law of Utah and Minnesota); *Nowacki v. Federated Realty Group, Inc.,* 36 F.Supp.2d 1099 (E.D.Wis. 1999); *Union Ins. Co. v. Knife Co.,* 902 F.Supp. 877 (W.D.Ark.1995); *CHI of Alaska, Inc. v. Employers Reinsurance Corp.,* 844 P.2d 1113 (Alaska 1993); *San Diego Navy Fed. Credit Union v. Cumis Ins. Soc'y, Inc.,* 162 Cal.App.3d 358, 208 Cal.Rptr. 494 (1984) *superceded by statute as stated in Dynamic Concepts, Inc. v. Truck Ins. Exch.,* 61 Cal.App.4th 999, 71 Cal.Rptr.2d 882 (1998); *Nandorf, Inc. v. CNA Ins. Cos.,* 134 Ill.App.3d 134, 88 Ill. Dec. 968, 479 N.E.2d 988 (1985); *Moeller v.*

*Am. Guar. & Liab. Ins. Co.,* 707 So.2d 1062 (Miss.1996); *Nisson v. Am. Home Assur. Co.,* 917 P.2d 488 (Okla.Ct.App.1996); *Public Serv. Mut. Ins. Co. v. Goldfarb,* 53 N.Y.2d 392, 442 N.Y.S.2d 422, 425 N.E.2d 810 (1981).

**61.** 585 F.2d 932, 938 (8th Cir.1978). The Eighth Circuit continued in a footnote:

> "In addition, we stress that the record does not indicate and [the insured] does not argue that [the insurer's] attorney acted improperly. However, we cannot escape the conclusion that it is impossible for one attorney to adequately and fairly represent two parties in litigation in the face of the real conflict of interest which existed here. Even the most optimistic view of human nature requires us to realize that an attorney employed by an insurance company will slant his efforts, perhaps unconsciously, in the interests of his real client the one who is paying his fee and from whom he hopes to receive future business the insurance company."

*Id.* at n. 5.

is not being litigated in the same action by the same attorney "does not detract from the force of these opposing interests as they operate on the attorney selected by the insurer...." [62] These courts generally hold that the conflict of interest inherent in an insurer's defense of a complaint against its insured containing both covered and non-covered claims divides the loyalty of counsel selected and paid by the insurer and creates an unacceptable danger that, as counsel for the insured, he would somehow, consciously or unconsciously, skew his defense efforts to favor the insurer. In these jurisdictions, counsel's divided loyalty entitles the insured to select "independent" counsel of its own choice at the expense of the insurer.

Other courts, however, reject the contention that where a conflict of interest exists between an insurer and its insured, the insured is always free to select its own counsel at the expense of the insurer.[63] These courts generally subscribe to the view that "the mere fact that defense counsel was assigned by the insurer is, by itself, insufficient ... to establish a lack of independence." [64] For these courts, the primary duty of loyalty owed by appointed counsel is to the insured, not the insurer, and "[t]o suggest that human nature prevents the harnessing of action motivated by self-interest is to contend that fiduciary relationships are unworkable." [65] Further, "[a]lthough an attorney is selected by an insurance company, the fees charged are paid by the insurance company as a benefit for which the insured has contracted, not because there is a duty of allegiance by the attorney to the insurer which eclipses the duty to the insured." [66] In these jurisdictions, the rules of attorney conduct coupled with the threat of malpractice liability provide sufficient assurance that appointed counsel will not continue to represent the insured where a conflict of interest interferes with counsel's ability to adhere to professional standards. As the District Court for the Western District of Michigan reasoned:

"As long as this standard is observed, the court may not interfere with the terms of the parties' agreement. To hold that the insurer who, under a reservation of rights, participates in selection of counsel, automatically breaches its duty of good faith is to indulge the conclusive presumption that counsel is unable to fully represent its client, the insured, without consciously or unconsciously compromising the insured's interests. The Court is unable to conclude that Michigan law professes so little confidence in the integrity of the bar of this state." [67]

**62.** *Cumis Ins. Soc'y, Inc.,* 162 Cal.App.3d at 364, 208 Cal.Rptr. 494.

**63.** *Trinity Universal Ins. Co. v. Stevens Forestry Serv. Inc.,* 335 F.3d 353 (5th Cir.2003) (applying Louisiana law); *Twin City Fire Ins. Co. v. Ben Arnold–Sunbelt Beverage Co. of South Carolina,* 336 F.Supp.2d 610 (D.S.C. 2004); *Cent. Mich. Bd. of Trustees v. Employers Reinsurance Corp.,* 117 F.Supp.2d 627 (E.D.Mich.2000); *Driggs Corp. v. Penn. Mfrs. Ass'n Ins. Co.,* 3 F.Supp.2d 657 (D.Md.1998); *Fed. Ins. Co. v. X–Rite, Inc.,* 748 F.Supp. 1223 (W.D.Mich.1990); *Cardin v. Pacific Employers Ins. Co.,* 745 F.Supp. 330 (D.Md.1990); *L & S Roofing Supply Co. v. St. Paul Fire & Marine Ins. Co.,* 521 So.2d 1298 (Ala.1987); *Dynamic Concepts, Inc. v. Truck Ins. Exch.,* 61 Cal. App.4th 999, 71 Cal.Rptr.2d 882 (Cal.Ct.App. 1998); *Finley v. Home Ins. Co.,* 90 Hawai'i 25, 975 P.2d 1145 (1998); *Tank v. State Farm Fire & Cas. Co.,* 105 Wash.2d 381, 715 P.2d 1133 (1986) (en banc ).

**64.** *Cent. Mich. Bd. of Trustees,* 117 F.Supp.2d at 636.

**65.** *Id.*

**66.** *Id.*

**67.** *X–Rite, Inc.,* 748 F.Supp. at 1229.

■ Upon a thorough review of the relevant case law throughout the country and in Florida, the Court concludes that the Florida Supreme Court would hold in this situation, that Travelers is not obligated to pay for the fees and expenses incurred by Royal Oak for independently retained counsel.

Not only did Travelers have the duty to defend Royal Oak against the Tilton action, but it also had the right to defend.[68] The right to control the defense is "a valuable one in that it reserves to the insurer the right to protect itself against unwarranted liability claims and is essential in protecting its financial interest in the outcome of litigation."[69] This meaningful contractual right should not be penalized merely because there exists the potential for insurer-selected counsel to become impermissibly conflicted in its representation. To so hold would require this Court to recognize a conclusive presumption, based on nothing more than the existence of a potential conflict between the insured and the insurer, that counsel is unable to provide independent representation. The Court is not willing to graft such an unwarranted presumption into the law. Instead, there must be some evidence to suggest that the conflict between the insurer and the insured actually affected counsel's representation so that it may be said that counsel's actions elevated the interests of the insurer over those of his client, the insured.

To this end, Royal Oak suggests that Mr. Argo put Travelers' interests before Royal Oak's when he decided to inform only Travelers that the Tilton estate intended to amend its complaint to assert potentially non-covered claims. Mr. Argo first learned that the Tilton estate planned to amend its complaint in February of 2001, days before the estate's first settlement proposal was due to expire. Royal Oak maintains that had it known of the plan to amend the complaint, it would have "urged" Travelers to accept the settlement before the amendment was permitted and while the complaint still contained only a negligence count, thereby avoiding this coverage dispute. The Court concludes that Royal Oak has not presented a genuine issue of material fact as to whether Mr. Argo's representation was affected by the conflict. First, when the allegedly disloyal conduct occurred, the respective interests of Royal Oak and Travelers were not adverse; the estate had not yet moved to amend the complaint and Travelers had not sent notice of its reservation of rights. The conflict at that time was not real or actual, but merely potential. Second, Mr. Argo promptly informed Royal Oak when the Tilton estate actually moved to amend the complaint in late June of 2001. Royal Oak did not at that time "urge" settlement, even though the motion had yet to be granted, opting instead to pursue other strategies.[70] Third, this Court has already held as a matter of law that Travelers did not violate its duty of good faith in declining to settle the complaint at the time it contained only a negligence count and was subject to the workers' compensation immunity defense.

In this case, therefore, there is no evidence to suggest that the conflict between Travelers and Royal Oak interfered with Mr. Argo's representation of Royal Oak.

---

**68.** Doc. 32, exh. C, part D ("We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance.").

**69.** *CHI of Alaska, Inc.,* 844 P.2d at 1122 (Moore, J. dissenting in part) (quoting 7C John A. Appleman, *Insurance Law and Practice* § 4681 (Walter F. Berdal ed., rev. ed.1979)).

**70.** Doc. 166, Deposition of Robert S. Lockett, III (Vice President and Chief Financial Officer of Royal Oak), at p. 58–61.

Mr. Argo recognized that his loyalty was to Royal Oak, and nothing indicates that Mr. Argo was unable to represent his client in accordance with the professional standards for independence. There is no evidence that Travelers attempted to influence Mr. Argo's professional judgment in such a way that Royal Oak's interests were disserved.[71] Indeed, in its response to Travelers' reservation of rights letter, Royal Oak never complained that Mr. Argo acted disloyally and never asked that Mr. Argo withdraw from representation.[72] Rather, immediately upon receiving the reservation of rights letter and before responding to it, Royal Oak retained King & Spalding to "supplement" the defense. Royal Oak was entirely within its rights to do so, but it does not necessarily follow that Travelers should have to pay for it. Travelers obligation was to provide an adequate defense. Nothing suggests that this duty was not fully discharged by Mr. Argo's conflict-free representation.

The Court is convinced that the rules governing the Florida bar and the attendant threat of malpractice liability provide sufficient assurance that counsel appointed by an insurer would not continue to represent an insured in the event that a conflict of interest interfered with counsel's ability to make independent professional judgments on behalf of his client.[73] Members of the Florida bar are charged with the responsibility of properly determining whether an actual conflict of interest exists, and if so, whether withdrawal from the representation is required. If counsel fails to do so and violates his or her duty of loyalty, he or she may face disciplinary actions and malpractice liability.

A prudent insured would employ some degree of caution when its interests become adverse to those of its insurer, and accordingly, Royal Oak was entirely within its rights to retain counsel at *its own expense*. But the question to be resolved by this Court is whether Florida law requires an insurer to pay for this counsel; it does not. The Court is unwilling to "indulge the conclusive presumption that counsel is unable to fully represent its client, the insured, without consciously or

---

**71.** Doc. 168, Deposition of Wayne Argo, Esq., at p. 12–13.

**72.** Doc. 166, Deposition of Robert S. Lockett, III (Vice President and Chief Financial Officer of Royal Oak), at p. 19–20.

**73.** At the time Mr. Argo undertook the representation of Royal Oak in 2000, the Rules of Professional Conduct contained the following relevant provisions:

> Rule 4–1.7(b):
> A lawyer shall not represent a client if the lawyer's exercise of independent professional judgment in the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person or by the lawyer's own interest, unless:
>> (1) the lawyer reasonably believes the representation will not be adversely affected; and
>> (2) the client consents after consultation.

> Rule 4–1.8(f):
> A lawyer shall not accept compensation for representing a client from one other than the client unless:
>> (1) the client consents after consultation;
>> (2) there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship; and
>> (3) information relating to representation of a client is protected as required by rule 4–1.6.
> Rule 4–1.6(a):
> [A] lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:
>> (1) the representation will result in violation of the Rules of Professional Conduct or law; . . .
> The rules have subsequently been amended to include more detailed explanations of the role of insurer-selected counsel in the representation of the insured.

unconsciously compromising the insured's interests." Accordingly, Royal Oak's counterclaim for reasonable fees and costs of independently retained counsel must fail.

## Conclusion

Accordingly, upon due consideration, it is adjudged that:

(1) Travelers' motion for summary judgment (Doc. 161) is GRANTED in part and DENIED in part;

(2) Royal Oak's motion for summary judgment (Doc. 170) is GRANTED in part and DENIED in part;

(3) the Court declares that at all times during the pendency of the Tilton litigation, Travelers owed a duty to defend Royal Oak, and is not entitled to reimbursement of the fees and costs incurred in providing that defense;

(4) summary judgment is granted in favor of Travelers on Royal Oak's claim for an award for the reasonable attorney's fees and costs incurred to retain independent counsel; and

(5) the Clerk is directed to rescheduled this case for trial on the issue of whether Travelers can prove by a preponderance of the evidence that the intentional tort claim stated in count two of the Tilton estate's amended complaint against Royal Oak was a viable or non-frivolous claim in fact and law so as to have settlement value, and, if Travelers is successful on that score, whether it can then prove by a preponderance of the evidence the portion of the settlement amount which should be attributed or allocated to the resolution of the intentional tort claim.

IT IS SO ORDERED.