825 So.2d 999 (2002)
NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, Appellant,
v.
Howard J. BEVILLE, Jr., and Belville II, Inc., Appellees.
No. 4D01-858.
District Court of Appeal of Florida, Fourth District.
August 7, 2002.
Rehearing Denied September 30, 2002.
*1000 Hala A. Sandridge and Tracy Raffles Gunn of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for appellant.
Jane Kreusler-Walsh and Rebecca J. Mercier of Jane Kreusler-Walsh, P.A., West Palm Beach, and Andrew M. Pelino of Burman, Critton, Luttier & Coleman, West Palm Beach, for appellees.
FARMER, J.
The issue in this appeal is whether as a matter of law an insured is entitled to recover expenses incurred in defending himself against a covered claim, even though the insured had violated the policy provision requiring prompt notice of the claim, after the insurance carrier agrees to defend its insured only with a reservation of its right to deny coverage. We hold that the insured is entitled to the recovery and affirm a summary judgment awarding such expenses.
*1001 The basic facts are not complicated. Beville owns a citrus business in Ft. Pierce. Michael Lee, a citrus contractor, hired farm workers to harvest Beville's crops. Lee is alleged to have committed several violations of federal and state labor laws in his treatment of the farm workers, including physical abuse and maltreatment. As a result, the farm workers filed suit against Beville and Lee in federal court alleging violations of the Seasonal Agricultural Workers Protection Act as well as the Fair Labor Standards Act. Beville was served with the suit papers in late November 1997.
A few weeks later, in December 1997, Beville met with Dan Woron, his long time Nationwide insurance agent and friend, at Beville's office for an annual insurance review. Beville carried a Commercial General Liability policy as well as an Umbrella Liability policy with Nationwide. There was some discussion regarding publicity about Lee and some general mention of labor problems resulting from Lee's activities in regard to Beville's farm workers. Beville complained to Woron that it was costing him "a lot of money" to defend a lawsuit.
Woron testified that Beville did not then offer or show him a copy of any suit papers. In fact, Woron testified that at that time he understood they were discussing litigation only by some unnamed governmental agency. Woron admits mentioning workers compensation coverage in the Nationwide policy and suggesting that Beville give him more information. On the other hand, Beville testified that he offered the suit papers to Woron at this meeting but that Woron gave them back to him.
In any case six months later, Beville's lawyers finally sent the suit papers to Woron and asked for a defense and coverage. Nationwide responded by offering to defend but only under a reservation of its right to deny coverage. Ultimately the case was settled with Nationwide paying damages to the plaintiffs in the action. Nationwide also agreed to reimburse Beville for the costs of defense, but only for the period after June 1998 when Beville's lawyers sent the suit papers. Beville then sued Nationwide for the costs of a defense from the time suit was served in November 1997 through June 1998. The trial court awarded a summary judgment in favor of Beville, concluding that the carrier had waived any defense to full reimbursement when it offered to defend its insured only under a reservation of rights.
It is well established in Florida law that "[i]f an insurance company breaches its contractual duty to defend, the insured can take control of the case, settle it, and then sue the insurance company for the damages it incurred in settling the action." MCO Envtl., Inc. v. Agric. Excess & Surplus Ins. Co., 689 So.2d 1114, 1116 (Fla. 3d DCA 1997); see also Taylor v. Safeco Ins. Co., 361 So.2d 743, 746 (Fla. 1st DCA 1978). The latter case is most instructive. Like the present case, Taylor v. Safeco involves a carrier agreeing to defend its insuredbut only under a reservation of the right to contest coverage. As Judge Smith's opinion sets out the circumstances:
"At the outset of this litigation Safeco was willing to afford Earl Taylor a defense because of the possibility that Earl might later be held to have been one insured by the policy and for whom it required a defense. But Safeco wished to avoid any implication that it acquiesced in the assertion, made by the claimant and by Earl, that Safeco would be liable to pay any resulting judgment. To avoid any claim of estoppel, Safeco notified Earl that it undertook his defense reserving its claim of nonliability for any judgment. Safeco was entitled to take that position, for the law distinguishes *1002 between the insurer's duties to defend and to pay, and does not forbid agreement between insurer and a putative insured which resolves the urgent question of who shall defend and postpones resolution of the contingent question of who shall pay any judgment.
"Similarly, Earl Taylor was not obliged to surrender control of his personal defense to an insurer which disclaimed responsibility for any judgment within policy limits that might result from the litigation. Without affecting the question of Safeco's liability to pay any judgment within policy limits, Earl was privileged at the outset to deny Safeco control of his defense which is exemplified by Safeco's selection and payment of a lawyer to represent Earl. Just as the insurer is not required to abandon its contest of a duty to pay as a condition of fulfilling an assumed or admitted duty to defend, the insured is not required to abandon control of his own defense as the price of preserving his claim, disputed by the insurer, that the insurer pay any judgment. The law respects, but does not require, such agreements. See, e.g., Bergh v. Canadian Universal Ins. Co., 197 So.2d 847, 849-50 (Fla. 1st DCA 1967).... The agreement between Earl and Safeco thus allayed the latent conflict until the circuit court by summary judgment determined, in April 1974, that Earl was not insured and that Safeco would have no responsibility for any judgment against him. When Safeco's nonliability as Earl's insurer was judicially determined, any duty it had to defend Earl terminated. Therefore, although Safeco was justified in withdrawing from Earl's defense simultaneously with Safeco's final dismissal from the action, the claimant's notice of appeal put Safeco on notice that its potential liability might yet be restored. Again Safeco offered to defend Earl, but again without prejudice to its right to contest responsibility to pay. This time, Earl refused the offer and undertook to conduct his own defense at trial." [c.o.]
361 So.2d at 745. In this case, Beville was placed in the same circumstance as Earl when the carrier here agreed to defend Beville in the farm workers' lawsuit but only while reserving the right to refuse coverage of any liability that might be imposed against Beville in the action.
The effect of an insurance carrier proposing to defend a putative insured while simultaneously disclaiming any obligation to cover the claim is further explained in Taylor:
"Given Safeco's legitimate reservation of its denial of ultimate liability, the law does not and did not compel Earl to accept, nor to restore, such a relationship. Earl was therefore free to provide his own defense without affecting any liability Safeco might ultimately have for the judgment. Earl was entitled also to effect a settlement of the widow's claim against him, and that notwithstanding Safeco's policy which forbad the insured to `assume any obligation' without Safeco's consent and which conditioned Safeco's liability on `a judgment against the insured after actual trial or by written agreement of the insured, claimant and SAFECO.' Safeco's reservation of its assertion of nonliability, though privileged, relinquished to Earl, at his election, control of the litigation....
"We are aware that many authorities speak of the insured's privilege to effect a reasonable settlement, payable by the insurer upon a finding that insurance existed, as arising upon the insurer's Unjustified refusal to defend. For the reasons stated above, we conceive that the insurer's potential obligation to pay also subsists when, as a result of the *1003 parties' failure to agree upon a conditional defense, the putative insured chooses to control the litigation and to effect a reasonable settlement." [e.s., c.o.]
361 So.2d at 746.
As Taylor v. Safeco makes clear, a carrier's unilateral defense under a reservation of rights is similar to a refusal to provide any defense at all in its effect on the insured. In either case, the carrier has violated its duties under the policy unconditionally to defend and indemnify its insured within specified limits. The consequence of that violation is that the carrier has transferred to its insured the power to conduct the defense of the claim against its insured.
This judicial construction of the policy rights and liabilities is codified in the Claims Administration Statute (CAS).[1] Under the CAS, once the carrier gives an insured notice of a reservation of rights, the carrier must either get a nonwaiver agreement with its insured or furnish mutually acceptable counsel to defend the insured against the claim. See Nationwide Mut. Fire Ins. Co. v. Keen, 658 So.2d 1101, 1103 (Fla. 4th DCA 1995) ("An insured is always free to refuse a defense under a reservation of rights."). Because of the failure of the carrier to comply with either alternative in this case, the carrier thus ceded control of the litigation to its insured and thus owed the insured the costs of the defense. See North Am. Van Lines, Inc. v. Lexington Ins. Co., 678 So.2d 1325 (Fla. 4th DCA 1996) ("if the insurer refuses to defend and the insured undertakes the defense and settles the case, the insured can certainly sue for reimbursements regardless of whether there is an excess judgment." [citing Taylor ]).
That leaves only the carrier's argument that the insured failed to give it proper notice of the lawsuit until June 1998 and therefore it cannot be held liable for the insured's expenses in providing a defense against the action between November 1997 and June 1998. The carrier argues that the policy required the insured to send the lawsuit papers to it immediately. It is true the policy notice provision requires that in the event of suit the insured must provide the carrier with written notice "as soon as practicable."[2] Accepting the testimony of Woron as true, the insured discussed the fact of a suit with the carrier's agent in December 1997 but did not send the suit papers to the carrier until June 1998. That would be a violation of the *1004 notice provision. The question is, however, whether the violation would allow the carrier to avoid liability for the expenses of defense during that period.
We do not think so. In the first place, any violation of the notice provision is in the nature of a "coverage defense" within the meaning of CSA. Section 627.426(2) bars the carrier from asserting a coverage defense unless the carrier has complied fully with the CAS. § 627.426(2), Fla. Stat. (2001) ("A liability insurer shall not be permitted to deny coverage based on a particular coverage defense unless...."). Here the record establishes beyond any doubt that the carrier did not comply with its statutory/policy obligations regarding the attempt to reserve the right to deny coverage. It failed to get an agreement with its insured for a nonwaiver of the right to contest coverage, and it failed to furnish mutually acceptable counsel to represent the insured in the lawsuit.
Even if the insured's violation of the notice provision survived the carrier's failure to comply with the CAS and its policy duty to defend, it is also clear that the carrier can point to no prejudice from the insured's failure to send the suit papers earlier. First, even when the insured did send the papers, the carrier agreed to provide only a conditional defense, reserving its right to deny coverage. The offer of only a conditional defense allowed the insured to defend the suit, which he did. The delay in giving notice had no affect whatever on the carrier's contractual duty to defend the suit because the carrier refused an unconditional defense and ceded thereby the defense to the insured. Obviously the failure of the carrier to offer a proper defense upon receipt of notice waives any defect in delaying notice.
Second, and in any event, the suit had to be defended from the very outset, and the insured did so. In his defense of the lawsuit the insured effectually protected the position of both the carrier and the insured as regards the claim. There is no suggestion that the insured's expenses in defending for the period from November 1997 to June 1998 were unreasonable or in some way prejudiced the carrier. Unless the carrier was prejudiced by the insured's violation of the notice provision, the carrier could not avoid its duty to provide coverage for the expenses. See Bankers Ins. Co. v. Macias, 475 So.2d 1216 (Fla.1985) (holding that forfeiture of coverage for violation of notice provision requires showing of prejudice; if insured breaches notice provision, prejudice to insurer will be presumed but may be rebutted by showing that insurer has not been prejudiced by lack of notice). In this case, the carrier makes no argument that it was prejudiced in some way by the insured's violation of the notice provision.
AFFIRMED.
WARNER and TAYLOR, JJ. concur.
NOTES
[1] See § 627.426(2), Fla. Stat. (2001) ("A liability insurer shall not be permitted to deny coverage based on a particular coverage defense unless: (a) Within 30 days after the liability insurer knew or should have known of the coverage defense, written notice of reservation of rights to assert a coverage defense is given to the named insured by registered or certified mail sent to the last known address of the insured or by hand delivery; and (b) Within 60 days of compliance with paragraph (a) or receipt of a summons and complaint naming the insured as a defendant, whichever is later, but in no case later than 30 days before trial, the insurer: 1. Gives written notice to the named insured by registered or certified mail of its refusal to defend the insured; 2. Obtains from the insured a nonwaiver agreement following full disclosure of the specific facts and policy provisions upon which the coverage defense is asserted and the duties, obligations, and liabilities of the insurer during and following the pendency of the subject litigation; or 3. Retains independent counsel which is mutually agreeable to the parties. Reasonable fees for the counsel may be agreed upon between the parties or, if no agreement is reached, shall be set by the court.").
[2] "If a claim is made or suit is brought against any insured, you must ... notify us as soon as practicable. You must see to it that we receive written notice of the claim or `suit' as soon as practicable."