927 So.2d 894 (2005)
Norma AGUERO, Individually and as Personal Representative of the Estate of Ambrosio Iglesias, and Ryder Truck Rental, Inc., Appellants,
v.
FIRST AMERICAN INSURANCE COMPANY, Appellee.
No. 3D03-223.
District Court of Appeal of Florida, Third District.
September 7, 2005.
Rehearing and Rehearing Denied May 24, 2006.
*895 Wasson & Associates, Chartered and Roy D. Wasson; Eversole & Associates, P.A. and John F. Eversole, III, Miami, for appellants.
Kubicki Draper and Caryn L. Bellus, Miami, for appellee.
Before RAMIREZ and CORTIÑAS, JJ., and SCHWARTZ, Senior Judge.
Rehearing and Rehearing En Banc Denied May 24, 2006.
CORTIÑAS, Judge.
The plaintiffs, Ryder Truck Rental, Inc. ("Ryder") and Norma Aguero ("Aguero"), as personal representative of the Estate of Ambrosio Iglesias ("Iglesias"), appeal from a final summary judgment in favor of the defendant, First American Insurance Company ("First American"), on a claim for coverage and liability insurance proceeds. We reverse.
Iglesias was a tractor trailer driver for Miami Services Express ("MSE"). On September 1, 1995, Iglesias was injured after he exited the tractor trailer to check on a rear tire and the tire exploded. The tractor portion of the truck was owned by MSE and the trailer portion was owned by Ryder.
MSE was listed as a named insured and Ryder was listed as an "additional" insured on a First American liability policy. On September 6, 1995, MSE's insurance agent sent an auto loss report to First American's claims adjuster. The auto loss report noted a claim number for Iglesias and also contained an accident report completed by Ryder describing Iglesias as the "injured."
*896 On December 29, 1995, Iglesias' attorney sent a letter to First American giving notice of the accident, advising that Iglesias was making a personal injuries claim, and requesting a disclosure of the policy information from First American. On that same day, First American sent a certified copy of the policy to Iglesias' attorney. On January 24, 1996, Iglesias' attorney requested a personal injury protection ("PIP") application and First American responded by faxing him an application. Thereafter, First American paid PIP benefits to Iglesias.
Ryder's claim file for Iglesias contains a computerized telephone message dated July 30, 1996, concerning a conversation between First American's claims adjuster and Ryder's claims adjuster. The parties dispute what the telephone conversation entailed. Ryder alleges that First American's claims adjuster informed Ryder's claims adjuster that First American would not cover property damages for Ryder's trailer or provide liability insurance coverage to protect Ryder against any potential claims brought by Iglesias. On the other hand, First American argues that the telephone conversation only concerned coverage for property damages, not liability.
On March 24, 1997, Iglesias filed a personal injury action against Ryder. On December 15, 1997, Ryder subpoenaed First American's PIP file. First American claims that Ryder and Iglesias mediated the case and eventually reached a settlement agreement in principal and amount by December 1998. However, Ryder claims that the agreement was tentative and "was not consummated," which is supported by the fact that discovery continued in Iglesias' case against Ryder and the settlement agreement was not approved by the trial court until March 2000.
On April 26, 1999, Ryder's attorney sent First American a letter stating that Ryder was an additional insured under the policy and requesting that First American indemnify Ryder in the lawsuit it had to defend against Iglesias. First American subsequently requested that Ryder provide it with a copy of the complaint, which Ryder eventually provided. First American investigated the matter and, on May 19, 1999, mailed a certified letter to Ryder reserving its right to deny or limit coverage on the basis that 1) Ryder was not an insured and, therefore, not entitled to indemnification, 2) an employee exclusion provision in the policy may preclude coverage for Ryder, and 3) Ryder did not provide First American with prompt notice of Iglesias' lawsuit against Ryder, as the April 26, 1999 letter was the first notice to First American.
On May 20, 1999, Ryder's attorney replied to First American's letter and stated, in pertinent part, as follows:
You were given an opportunity to correct your initial mistake as to coverage for Ryder and you have chosen instead to shirk your contractual obligations. Ryder is now left without coverage for this claim although you are contractually bound to cover them for this incident. Ryder will now do what it takes to extinguish its exposure presented by the Iglesias claim and will enforce through the courts the contract, which your company has refused to honor.
On that same day, First American responded by stating, in relevant part, "[a]fter reading [your letter dated May 20, 1999], I believe you misunderstood my May 19th, 1999, letter. Please understand, we do agree to defend Ryder Truck, Rental, Inc., subject to our Reservation of Rights." First American's letter also requested copies of the complaint, supporting documents, and other records in Ryder's possession.
*897 On June 17, 1999, Iglesias and Ryder entered into a Coblentz[1] agreement for the entry of a $1,000,000 consent judgment in favor of Iglesias. The Coblentz agreement provided, among other things, that 1) Ryder would assign its rights against First American to Iglesias, 2) Iglesias would release Ryder, and 3) Iglesias and Aguero would reimburse Ryder for the amounts Ryder paid under the settlement in the event that they recovered in an action against MSE, MSE's insurance agent, or First American. After the consent judgment was entered, Ryder, Iglesias, and Aguero filed a declaratory judgment action against First American for breach of the insurance contract and bad faith failure to settle.[2] While the lawsuit was pending, Iglesias died and Aguero, his widow, was substituted as the personal representative of his estate.
Ryder and Aguero alleged that First American was on notice of the lawsuit and that First American refused to provide a defense or fund the settlement. Ryder and Aguero further alleged that Ryder settled with Iglesias and Aguero in an effort to mitigate its damages. In response, First American alleged that Ryder breached the notice and cooperation clauses contained in the insurance policy.
First American filed a motion for summary judgment on the basis that Ryder breached the insurance contract by entering into a settlement agreement with Iglesias and Aguero after First American agreed to defend Ryder, and that Ryder failed to provide First American with timely notice of the lawsuit against Ryder. The trial court entered final summary judgment in favor of First American. We reverse.
We review the trial court's entry of summary judgment de novo. See Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126 (Fla.2000). When considering a motion for summary judgment, the trial court must determine that no genuine issue of material fact exists, and that the moving party is entitled to summary judgment as a matter of law. Aberdeen, 760 So.2d at 126. The court must draw every possible inference in favor of the nonmoving party. Moore v. Morris, 475 So.2d 666, 668 (Fla.1985). Summary judgment should be denied if there is "even the slightest doubt" that a genuine issue of material fact exists. Carbajo v. City of Hialeah, 514 So.2d 425, 425 (Fla. 3d DCA 1987).
Ryder and Aguero maintain that a genuine issue of material fact exists as to whether the telephone conversation between First American's claims adjuster and Ryder's claims adjuster included discussions about liability insurance. Ryder and Aguero claim that, if the telephone conversation discussed liability insurance coverage for Ryder, it would be sufficient for timely notice of the liability claim to First American.
However, First American contends that the telephone conversation is irrelevant to the issue of notice since Iglesias had yet to file a lawsuit against Ryder. According to the cooperation clause in the insurance policy, Ryder was to "immediately" send copies to First American of any complaints made against it, and Ryder was not to make any payment without the consent of First American, except at Ryder's own cost. First American further contends that Ryder's failure to notify First American *898 of the lawsuit and Ryder's execution of a settlement agreement constituted a material failure to cooperate, which would thereby void coverage. See Philadelphia Indem. Ins. Co. v. Kohne, 294 F.Supp.2d 1319, 1325 (M.D.Fla.2003).
However, "[t]he question of whether the failure to cooperate is so substantially prejudicial as to release the insurance company of its obligation is ordinarily a question of fact, but under some circumstances, particularly where the facts are admitted, it may well be a question of law." Kohne, 294 F.Supp.2d at 1325. Even assuming that Ryder failed to cooperate, a material question of fact still exists as to whether First American was prejudiced by Ryder's delay in notifying First American, especially where First American received notice of the lawsuit prior to execution of the settlement agreement. We find that the disputed issues of fact in this case preclude the entry of summary judgment in favor of First American.
As to the issue of First American's defense under a reservation of rights, First American claims that it did not breach its duty to defend Ryder because it offered a defense under a reservation of rights. See First Am. Title Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA., 695 So.2d 475, 476-477 (Fla. 3d DCA 1997). In response, Ryder claims that First American violated its duty because its unilateral defense under a reservation of rights was similar to a refusal to provide any defense at all. See Nationwide Mut. Fire Ins. Co. v. Beville, 825 So.2d 999, 1003 (Fla. 4th DCA 2002). Ryder also claims that, because First American breached its duty, First American transferred to Ryder the power to defend itself against Iglesias' claim. See Beville, 825 So.2d at 1003.
This issue was addressed in Travelers Indem. Co. of Illinois v. Royal Oak Enters., Inc., 344 F.Supp.2d 1358, 1371 (M.D.Fla.2004), which held that "when an insurer offers to defend under a reservation of rights, Florida law provides that the insured may, at its own election, reject the defense and retain its own attorneys without jeopardizing his right to seek indemnification from the insurer for liability." Travelers, 344 F.Supp.2d at 1370. However, the insured must actually reject that defense. Travelers, 344 F.Supp.2d at 1371 (citing Giffen Roofing Co. v. DHS Developers, Inc., 442 So.2d 396, 397 (Fla. 5th DCA 1983)).
In the instant case, Ryder's May 20, 1999 letter could be construed as a rejection of First American's defense under a reservation of rights. If it is determined that Ryder's letter constituted a rejection of First American's defense under a reservation of rights, Ryder would have been entitled to retain its own attorney to defend against Iglesias' claim without jeopardizing its right to seek indemnification from First American. See Travelers, 344 F.Supp.2d at 1370. Therefore, there is also a genuine issue of material fact as to whether Ryder's letter constituted a rejection of First American's defense under a reservation of rights.
Reversed and remanded.
RAMIREZ, J., concurs.
SCHWARTZ, Senior Judge (dissenting).
I would affirm on the ground that it appears without genuine issue that the insured breached the cooperation clause by unilaterally purporting to "settle" the case despite (and probably because of) the insurer's good faith offer of an appropriate defense. See Am. Reliance Ins. Co. v. Perez, 712 So.2d 1211 (Fla. 3d DCA 1998).
NOTES
[1] See, e.g., Coblentz v. American Sur. Co., 416 F.2d 1059 (5th Cir.1969).
[2] Ryder, Iglesias, and Aguero also named MSE and MSE's insurance agent as defendants but later voluntarily dismissed the action against them.