Emile T. PETRO, Jr., et al., Plaintiffs,

v.

**TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, Defendant.**

**Case No. 3:12CV491/MCR/CJK.**

United States District Court, N.D. Florida, Pensacola Division.

Signed Sept. 24, 2014.

As Amended Dec. 19, 2014.

Michael H. Crew, Crew & Crew PA, Fort Walton Beach, FL, for Plaintiffs.

Andrew V. Tramont, Rodriguez Tramont Guerra ETC PA, Coral Gables, FL, for Defendant.

## *AMENDED ORDER*

M. CASEY RODGERS, Chief Judge.

Plaintiffs in this action owned units in the Shelter Cove Condominium, managed by Shelter Cove Condominium Association, Inc. ("Shelter Cove"), which maintained an insurance policy with Defendant Travelers Casualty and Surety Company of America ("Travelers"). As a result of damage to the condominium caused by Hurricane Ivan, Plaintiffs sued Shelter Cove on various claims related to the repair or recon-

struction of the condominium. The parties settled the state court suit and obtained a consent judgment. Shelter Cove assigned its rights under the policy to Plaintiffs, who in turn filed this suit against Travelers, seeking declaratory relief for the amount of the consent judgment and asserting claims of breach of contract and bad faith. Both parties have moved for summary judgment on Count One (declaratory relief) and Count Two (breach of contract) of the Amended Complaint.[1]

**Background**

Travelers insured Shelter Cove under a Non–Profit Management and Organization Liability Insurance Policy that was in effect from 2004 through 2010. The policy provided a $1,000,000 annual aggregate limit per claim, to be reduced by any costs Travelers incurred in defending the claim. In September 2004, Hurricane Ivan significantly damaged part of the condominium where Plaintiffs owned units, and Shelter Cove took action to repair and reconstruct the building. Nearly three years later, on July 20, 2007, Plaintiffs filed an "Action for Termination of Condominium" in the Circuit Court of Escambia County, Florida, seeking to terminate the condominium ownership and partition its assets because Shelter Cove allegedly failed to obtain the necessary and timely written consent of two-thirds of the owners to rebuild the structure as Shelter Cove had planned, as required by the Shelter Cove Declaration of Condominium. Travelers received notice of the lawsuit on August 13, 2007, and sent Shelter Cove a letter dated August 21, 2007, agreeing to defend Shelter Cove under a reservation of rights and advising that the law firm of Litchfield Cavo, LLP had been retained to handle the defense. In the letter, Travelers reserved its right under the policy to deny liability for loss and expenses should it be determined there is no coverage, and Travelers listed policy provisions that could impact coverage, including exclusions if the insured deliberately committed an act of fraud or agreed to settle a claim or assume liability without Travelers' written consent.

Plaintiffs later amended their state-court complaint on February 3, 2010, adding two insured Shelter Cove board members, Holly Gallopo and Joel Earheart, as defendants and seeking damages for negligence and fraud, in addition to the equitable relief in the initial pleading. Specifically, Plaintiffs claimed that the named defendants fraudulently misrepresented that they had received the proper consents before proceeding with reconstruction, negligently managed insurance proceeds, and ultimately failed to timely reconstruct the condominium. Travelers received notice of the amended pleading by at least June 2010. Travelers continued to defend Shelter Cove, and also defended Gallopo and Earheart, using the same law firm. In February 2011, Plaintiffs offered to settle the state law claims for $432,306, but neither the defendants in the state court proceedings nor Travelers accepted the offer.[2] On April 6, 2011, Travelers sent to the Shelter Cove Board of Directors what Travelers described as a "follow up to [its]

---

1. The Court previously abated the bad faith claims until the underlying issues of coverage and liability are resolved. Also pending before the Court is Travelers' Motion to Exclude the Testimony of David L. Stegall, pursuant to *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), which will be denied as moot in light of this Order.

2. Gallopo testified that because she did not believe she had done anything wrong, she did not think that the settlement in the amount of $432,306 was reasonable. (Doc. 52–10, at 8). Earheart was disappointed that the case did not settle early in the litigation, but he had no complaint against the attorney representing them.

earlier coverage analysis," explaining that it had retained Litchfield Cavo, LLP to represent the interest of Shelter Cove, Gallopo, and Earheart under a reservation of rights with similar disclaimers as the August 2007 letter and explaining that its duty to defend would cease upon exhaustion of the limit of liability. Travelers ultimately defended the suit for four years and eleven months before being terminated in May 2012. Up to that point, Shelter Cove, Gallopo, and Earheart did not specifically object to the defense or the representation of Litchfield Cavo, LLP or its attorneys, though at times Earheart expressed to Travelers his displeasure with the way the defense was being handled because he believed the case should have settled in mediation.[3]

The state court scheduled the trial to begin on May 21, 2012. Two days before trial was to begin, Plaintiffs submitted a final settlement offer in the total amount of $1,517,040 with an expiration date of May 25. The trial was then rescheduled for May 28, and Shelter Cove's Board of Directors held an emergency meeting on May 20 to consider the new settlement offer. The Board instructed its independently retained lawyer, William Walter, that if Travelers did not consent to the

offer or otherwise settle the case within twenty-four hours, Shelter Cove was to "immediately accept plaintiffs' settlement offer, pursuant to *Coblentz v. American Surety Co. of New York.*"[4] On May 22, Walter, acting as independent counsel for Shelter Cove, Gallopo, and Earheart, sent a letter to Travelers informing it of the recent settlement offer and demanding that Travelers immediately confirm complete coverage or settle the case by close of business on May 23. Walter stated that, if not, Shelter Cove intended to terminate Travelers' defense and settle the case on its own in order to mitigate further damages.[5] On May 23, Travelers sent a letter to Walter stating that it would not agree to assume full financial responsibility for the settlement but would contribute $180,000. The following day, Shelter Cove, Gallopo, and Earheart terminated Travelers' defense and executed a settlement agreement with Plaintiffs.

In the settlement agreement, the underlying parties agreed to sign and file with the state court a joint motion for consent judgment. Shelter Cove assigned to Plaintiffs its rights and claims under the insurance policy, and it was agreed Plaintiffs would delay execution of a stipulated final judgment against Shelter Cove until

---

3. Gallopo testified in her deposition that when she and Earheart were named as defendants in the underlying suit, it was her understanding that attorneys with Litchfield Cavo were also representing Earheart and her individually. Earheart testified in his deposition that, although he was disappointed in the way Travelers handled the defense in 2008 because the case did not get resolved in mediation, he did not tell Travelers that Shelter Cove or he wanted to reject the defense. Counsel clarified the question by stating, "I'm talking about you personally and you as a representative of Shelter Cove," and Earheart affirmed that he did not tell Travelers that he wanted to reject the defense in 2010 or 2011. He also testified, "Ben Lofaro represented us perfectly."

4. As explained *infra*, a valid *Coblentz* agreement permits an insured, under limited circumstances, to independently enter into a consent judgment that is binding on an insurer who denies coverage and refuses to provide a defense. *See Coblentz v. Am. Sur. Co. of N.Y.*, 416 F.2d 1059, 1062–63 (5th Cir.1969); *see also Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc) (adopting the case law of the former Fifth Circuit developed before October 1, 1981, as precedent in this Circuit).

5. The letter further stated that Shelter Cove would be obligated to reimburse and indemnify Gallopo and Earheart for their expenses to satisfy the judgment.

final resolution of the assigned claims or a maximum of two years. The agreement specified that it was the result of a compromise and should not be considered an admission as to any facts or liability by any of the parties. In their joint motion for consent judgment, the parties stipulated to an entry of judgment on Count One "for negligence" against Shelter Cove on grounds that it failed to obtain the proper owners' consents to reconstruct the condominium in 2004; on Count Two "for negligence" in failing to use reasonable care in the management of the insurance proceeds obtained regarding the deconstruction of the building between 2005 and 2007; and on Count Three "for negligence" in failing to timely reconstruct the structure in 2008. The parties also stipulated to a dismissal with prejudice as to the remaining claims and moved for a damage award in favor of Plaintiffs and against Shelter Cove in the total amount of $1,517,040. On May 25, 2012, the state court entered a final judgment that recited the stipulations and awarded Plaintiffs $1,267,040 for damages and $250,000 for legal fees and costs, to be recovered from Shelter Cove.

Plaintiffs, as assignees, then filed suit in this Court against Travelers. In Count One of the Amended Complaint, they seek a declaration of rights under the insurance policy, requesting the Court to find Travelers obligated to provide coverage in the full amount of the final state court judgment ($1,517,040), plus interest, attorney's fees and costs, for what Plaintiffs allege to be three separate claims. In Count Two, Plaintiffs allege that Travelers breached the insurance contract by rejecting offers to settle within the policy limits and failing to properly defend and indemnify, also seek damages in the amount of the final state court judgment plus attorney's fees, interest, and costs.

## Discussion

### *Standards of Review*

■ A federal court sitting in diversity generally applies federal procedural law and the substantive law of the state in which it sits. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Trailer Bridge, Inc. v. Illinois Nat. Ins. Co.,* 657 F.3d 1135, 1141 (11th Cir.2011). Accordingly, the Court applies federal procedural law and Florida substantive law to the issues in this case, and thus Florida law governs the construction of the insurance policy. *See Provau v. State Farm Mut. Auto. Ins. Co.,* 772 F.2d 817, 819–20 (11th Cir.1985) (providing that the construction of insurance contracts is a matter of state substantive law).

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record ... or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R.Civ.P. 56(c)(1). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If shown, the burden shifts to "the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). Rule 56(a) "mandates the entry summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In making these determinations, the Court considers the non-movant's evidence as true and draws all justifiable inferences in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When considering cross motions for summary judgment, the Court applies the same standards; each motion must be considered on its own with the facts viewed in the light most favorable to the nonmoving party, and to prevail, the moving parties must establish that there is no genuine dispute of fact and that they are entitled to judgment as a matter of law. *See, e.g., Am. Bankers Ins. Grp. v. United States,* 408 F.3d 1328, 1331 (11th Cir.2005); *United States v. Oakley,* 744 F.2d 1553, 1555–56 (11th Cir.1984).

### Insurance Contract Provisions

■ When interpreting insurance coverage provisions, the Court is required by Florida law to examine the "policy as a whole and give every provision its full meaning and operative effect." *State Farm Fire & Cas. Co. v. Steinberg,* 393 F.3d 1226, 1230 (11th Cir.2004) (citing *Excelsior Ins. Co. v. Pomona Park Bar & Package Store,* 369 So.2d 938, 941 (Fla. 1979)). If the policy language is plain and unambiguous, that language governs because it is the result of the parties' bargained-for exchange. *Id.* However, if the language "is susceptible to more than one reasonable interpretation," the policy is "interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy." *Id.* (quoting *Auto–Owners Ins. Co. v. Anderson,* 756 So.2d 29, 34 (Fla.2000)). Ambiguity in coverage provisions, particularly exclusionary clauses, are strictly construed against the insurer. *Fayad v. Clarendon Nat'l Ins. Co.,* 899 So.2d 1082, 1086 (Fla.2005) (citing *Auto–Owners,* 756 So.2d at 34).

■ The insurance policy at issue is a "claims made and reported" policy with defense costs included in the $1,000,000 aggregate limit of liability. Pursuant to the policy, the insurance company promises to cover loss up to the policy limit incurred from a claim for a wrongful act. A loss is an amount the insured "becomes legally obligated to pay," "with some exceptions, and a wrongful act is defined as an error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed" by the insured. "Related Wrongful Acts" are those that "arise out of, are based on, relate to or are in consequence of the same facts, circumstances, or situations." Losses based on the same, or a related, wrongful act are to be "considered a single Loss incurred as a result of a single Claim," which is deemed to have been made on the date of the first claim for that wrongful act or related wrongful act.

Under the policy, the insurance company has the duty to defend any claim governed by the policy, even if the claims are "groundless, false or fraudulent," but the duty to defend will cease on exhaustion of the policy limits. The insured agrees to provide assistance, cooperation, and do nothing that may prejudice the insurer's position. The policy also states that the insured agrees not to settle any claim or incur any defense cost or admit any liability with respect to a claim "without the Insurer's written consent, which shall not be unreasonably withheld," and respectively expressly states the insurance company "shall not be liable for any settlement,

Defense Costs, assumed obligation or admission to which it has not consented." The policy excludes from coverage, among other things, "any deliberately fraudulent or dishonest act or omission or any purposeful violation of any statute or regulation" established by a judgment or other final adjudication. Additionally, it provides:

No action shall lie against the Insurer unless, as a condition precedent thereto, there shall have been full compliance by the Insureds with all terms of this Policy; nor shall any such action lie until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against an Insured after actual trial or by written agreement of the Insured, the claimant, and the Insurer.

### *Travelers' Position–Coblentz Agreement*

■ Travelers argues it is not obligated to pay the state court judgment because ·Plaintiffs and Shelter Cove entered into a settlement agreement without Travelers' consent, contrary to the policy terms, although Travelers was providing a defense pursuant to the policy. Where a liability insurer denies coverage and wrongfully refuses to defend an insured against a claim, the law recognizes that the insured may enter into a fair consent judgment for liability with the adverse party and bind the insurer, if coverage exists, despite language in the policy that seemingly would

prevent such a result. *See Coblentz v. Am. Sur. Co. of New York*, 416 F.2d 1059, 1062–63 (5th Cir.1969).[6] This is referred to as a *Coblentz* agreement. Since the *Coblentz* decision, courts in the Eleventh Circuit ·and Florida have set out three ·requirements that a party seeking to recover the amount awarded in a consent judgment pursuant to a *Coblentz* agreement must prove: (1) that the insurer wrongfully refused to defend; (2) that the insurer had an obligation to cover the loss or indemnify under the policy; and (3) that the settlement was objectively reasonable and made in good faith.[7] *See, e.g., Stephens v. Mid–Continent Cas. Co.*, 749 F.3d 1318, 1321–22 (11th Cir.2014) (citing *Coblentz* and *Chomat v. N. Ins. Co. of N.Y.*, 919 So.2d 535, 537 (Fla. 3d DCA 2006)); *Sinni v. Scottsdale Ins. Co.*, 676 F.Supp.2d 1319, 1324 (M.D.Fla.2009). "Florida courts have also extended the reasoning of *Coblentz* to allow agreements by the insured to a judgment in excess of the policy limits against an insured who wrongfully refuses to defend and acts in bad faith." *Perera v. U.S. Fid. and Guaranty Co.*, 35 So.3d 893, 900 (Fla.2010).

■ Turning first to the issue of whether Travelers wrongfully refused to defend, the Court notes that an insurer's duty to defend is broader than its duty to indemnify. *Lime Tree Village Comm. Club Ass'n, Inc. v. State Farm Gen. Ins. Co.*, 980 F.2d 1402, 1405 (11th Cir.1993) (citing *Baron*

---

**6.** In *Coblentz*, after an insured motel owner's liability insurer withdrew its defense, the parties to the action entered into a stipulation of facts and agreed that any judgment could be satisfied only from the liability insurance policy. 416 F.2d at 1060–61. A state court judgment was then entered against the insured based on the stipulated facts. When Coblentz brought suit against the insurer to recover the amount of the judgment, the insurer removed the case to federal court. The former Fifth Circuit concluded that the insurer had repudi-

ated its clear duty to defend, "and, having abandoned the case, it left the assured at liberty to take up the defense" such that the insurer "could not later complain about the form of the judgment." *Id.* at 1063.

**7.** It is typical in these situations for the insured to assign the cause of action it would have had against the insurer to the underlying claimant. *See Chomat v. N. Ins. Co. of N.Y.*, 919 So.2d 535, 536 (Fla. 3d DCA 2006).

*Oil Co. v. Nationwide Mut. Fire Ins. Co.,* 470 So.2d 810, 813 (Fla. 1st DCA 1985)). In determining whether an insurer owes a duty to defend, the Court looks at the complaint against the insured to see whether the allegations "fairly and potentially bring the suit within policy coverage." *Id.* Here, the underlying state court action involved claims of negligence against Shelter Cove, Gallopo, and Earheart regarding the reconstruction of the condominium, which are wrongful acts within the scope of the policy.[8] *See id.* (stating "the insurer is obligated to defend the entire suit" even if some claims are not within the insurance coverage (internal marks omitted)). The undisputed record confirms that Travelers had a duty to defend.

▬▬ It is also undisputed that Travelers defended the underlying suit under a reservation of rights.[9] Florida law provides that "an insurer may reserve the right to challenge coverage under the policy without breaching its duty to defend by providing a defense under a reservation of rights." *Mid–Continent Cas. Co. v. Am. Pride Building Co.,* 601 F.3d 1143, 1149 (11th Cir.2010). When a defense is offered under a reservation of rights, the insured has a right to reject the conditional defense, retain control over the defense, and effect a reasonable settlement, despite a contract term forbidding settlement without the insurer's consent and thus without releasing the insurer's obligation to pay for covered losses. *See Taylor v. Safeco Ins. Co.,* 361 So.2d 743, 744, 746 (Fla. 1st DCA 1978) (insured rejected the defense at the

outset of the case); *see also W. Heritage Ins. Co. v. Montana,* 8:13cv1116, 2014 WL 3057393, at *5 (M.D.Fla. July 7, 2014) (citing *Taylor,* 361 So.2d at 746). "However, the insured must actually reject the conditional defense to be entitled to take control of the defense." *Montana,* 30 F.Supp.3d at 1372, 2014 WL 3057393, at *5 (citing *Aguero v. First Am. Ins. Co.,* 927 So.2d 894, 898 (Fla. 3d DCA 2005)). On the other hand, where "the insured accepts and does not reject the unconditional defense, the insured is required to cooperate with the insurer." *Id.; see also Am. Pride,* 601 F.3d at 1149. Florida law also provides that an insured who does not reject a conditional defense at the outset may nonetheless subsequently reject it "if the insurer changes the terms of the defense in a material way." *Am. Pride,* 601 F.3d at 1150 ˌ(internal marks omitted) (finding a question of fact on this issue where, although the insured had accepted the conditional defense for over a year before rejecting it, there was evidence that the insurance company had changed the conditions of the defense by seeking attorney's fees and costs).

The undisputed record in this case shows that Travelers retained defense counsel and provided a fully funded though conditional defense, which Shelter Cove accepted for over four years before rejecting on the eve of trial. Although Shelter Cove was not required to accept Travelers' conditional defense at the outset, the fact is that it did accept it, and Plaintiffs have not produced any facts suggesting that Shelter Cove may have rejected the condi-

---

8. The presence of fraud claims in the underlying case did not negate the duty to defend.

9. Whether that reservation of rights complied with requirements of Florida's Claims Administration Statute, a violation of which could preclude Travelers from asserting "coverage" defenses, is not at issue in Travelers' motion,

which challenges only its responsibility for the entire judgment based on a *Coblentz* agreement. For purposes of this analysis, the only question is whether Travelers wrongfully *refused* to defend. The adequacy of any defense provided is the subject of Plaintiffs' motion, discussed below.

tional defense at the outset.[10] The evidence clearly shows Shelter Cove's written acceptance of, and acquiescence in, the defense. Plaintiffs also have failed to show any facts suggesting a material change in the terms of the defense that justified the belated rejection. *See Am. Pride*, 601 F.3d at 1150 ("[A]n insured may reject a conditional defense after the initial offering if the insurer changes the terms of the conditional defense in a material way.").

Plaintiffs instead argue only that Travelers' reservation of rights did not comply with statutory requirements, that Travelers unreasonably withheld consent to settle, and that Travelers provided an inadequate defense. In the Court's view, these arguments miss the mark with regard to satisfying the wrongful-refusal-to-defend element of a *Coblentz* agreement, which is the focus of Travelers' motion.[11] *See id.* at 1149–50 ("While it is undisputed that Mid–Continent provided American Pride with the basic requirements of a defense, it is less clear whether Mid–Continent acted in good faith in that defense. Nevertheless, by accepting and not rejecting Mid–Continent's fully funded defense, American Pride was required to cooperate with Mid–Continent throughout the [underlying] litigation."). Travelers'

refusal to accept Shelter Cove's ultimatum on the eve of trial was not a wrongful refusal to defend. Instead, Shelter Cove arranged a settlement without Travelers' participation and unilaterally chose to terminate the defense. *See Cont'l Cas. Co. v. City of Jacksonville*, 550 F.Supp.2d 1312, 1344 n. 28 (M.D.Fla.2007) ("It would seem inequitable to allow an insured to take control of the litigation at the eleventh hour so as to preserve its rights to coverage after it has (1) accepted a defense from its insurer, and then (2) prejudiced the insurer by settling the claim behind the insurer's back."), *aff'd* 283 Fed.Appx. 686 (11th Cir.2008). Also, Travelers' duty to defend is not synonymous with a duty to settle, particularly in a case such as this where the settlement offer arguably exceeded policy limits. *See Zurich Am. Ins. Co. v. Frankel Enters.*, 509 F.Supp.2d 1303, 1315 (S.D.Fla.2007) (rejecting an insured's duty-to-settle argument because it would lead to the incongruous result that if an insurer did not settle after suit was filed, an insured could unilaterally settle with the plaintiff beyond the policy limits and bind the insurer, with no personal exposure to the insured). Thus, the Court finds that Travelers did not wrongfully refuse to defend, and therefore, the requirements to enforce a *Coblentz* agreement have not been met.[12] *See id.* at 1311

10. Cases cited by Plaintiffs for the proposition that a conditional defense is akin to no defense at all are those in which no defense was offered or the insured was justified in rejecting the conditional defense at the outset, or at least a question of fact existed on the issue. *See Aguero v. First Am. Ins. Co.*, 927 So.2d 894, 898 (Fla. 3d DCA 2005); *Nationwide Mut. Fire Ins. Co. v. Beville*, 825 So.2d 999, 1003 (Fla. 4th DCA 2002). That is not the case here.

11. Plaintiffs' arguments are instead relevant to the issue of whether Travelers provided an adequate defense, the existence of coverage under the terms of the policy, or whether Travelers unreasonably withheld consent to

settle, but not to determining whether Travelers wrongfully refused to defend as would be necessary to establish the existence of a *Coblentz* agreement. Likewise, the Court agrees with Travelers that the Claims Administration Statute, Fla. Stat. 627.426, applies only to preclude particular coverage defenses and is therefore not relevant to a determination of whether there is a valid *Coblentz* agreement.

12. This conclusion precludes Plaintiffs from relying on the agreement to seek amounts above the policy limits and excuse its duty to cooperate but does not, without more, entitle Travelers to a judgment as a matter of law releasing it from all obligations under the policy. Under Florida law, the duty to defend

(noting a *Coblentz* agreement binds the insurer "only if the insurer refuses to defend").

In light of this conclusion, the Court need not consider the remaining elements necessary to the existence of a *Coblentz* agreement. However, the absence of a valid *Coblentz* agreement due to the fact that Travelers did not wrongfully refuse a defense does not alone carry the day to relieve Travelers of all obligations for coverage under the policy. Rather, it merely precludes Plaintiffs in this instance from relying on the agreement alone as a basis for recovery. Thus, although Travelers did not wrongfully refuse to defend, Plaintiffs are entitled to go forward with their arguments that they are nonetheless entitled to coverage under the policy.

***Plaintiffs' Position–Coverage***

■■■ In their summary judgment motion, Plaintiffs assert that the final state court judgment is covered under the policy as three separate occurrences, each with a $1,000,000 limit; that Travelers waived all coverage defenses under the policy, failed to adequately defend, and unreasonably refused to consent to the settlement; and that the settlement was reasonable and made in good faith. Travelers maintains in opposition that Plaintiffs violated the terms of the policy, and thus, Travelers is relieved of its obligation to pay the judgment.[13]

■■■ The insurance policy at issue includes a cooperation clause, which required Shelter Cove to cooperate with all reasonable requests and do nothing that might prejudice Travelers' position. Under the policy terms, Shelter Cove agreed not to settle any claim or admit any liability with respect to any claim "without the [Travelers'] written consent, which shall not be unreasonably withheld." The policy further provides that if Shelter Cove does not fully comply with all terms of the policy, "no action shall lie against the [Travelers]." It is well-settled in Florida law that to constitute a breach of the policy and preclude coverage, a failure to cooperate must be material and of such nature as to substantially prejudice the insurer's rights. *See Ramos v. Northwestern Mut. Ins. Co.*, 336 So.2d 71, 75 (Fla.1976). The Florida Supreme Court has explained that the question of whether a failure to cooperate is so substantially prejudicial as to release the insurance company of its obligation to pay is "ordinarily a question of fact, but under some circumstances, particularly where the facts are admitted, it may well be a question of law." *Id.* The Eleventh Circuit has also recognized that under Florida law, "while an insured is free to enter into a settlement agreement when its insurer has wrongfully refused to provide it with a defense to suit, ... the insured is not similarly free to engage in settlement where, as here, the insurer has not declined a defense to suit." *Cont'l Cas. Co. v. City of Jacksonville*, 283 Fed.Appx. 686, 692 (11th Cir.2008) (internal marks omitted).

Plaintiffs argue that Shelter Cove's failure to obtain consent is excused because Travelers unreasonably withheld consent to settle under the policy terms. The Court finds that the relevant facts on this issue are undisputed such that the ques-

is broader and also separate and distinct from the insurer's duty to indemnify or the determination of whether there is coverage under the policy. *First Am. Title Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 695 So.2d 475, 476 (Fla. 3d DCA 1997).

13. Travelers also relies on its argument that there is no *Coblentz* agreement, but, as noted above, even finding that to be true, Travelers is not automatically relieved of all coverage obligations under the policy.

tion can therefore be determined as a matter of law. It is undisputed that Shelter Cove settled the underlying lawsuit without Travelers' consent. The suit involved claims of both negligence, which is covered, and fraud, which is not. Plaintiffs' deposition testimonies confirm that they always believed all of the allegations in the state court suit were well-founded. Gallopo and Earheart maintained they had done nothing wrong on behalf of Shelter Cove. As noted above, Travelers was defending Shelter Cove under a reservation of rights and had been doing so for well over four years (nearly five years) when terminated by Shelter Cove. Trial was scheduled to begin in a matter of days when Shelter Cove gave Travelers the ultimatum that it must agree to complete coverage, consent to settle the case for the demanded $1.5 million offer, as Shelter Cove and Plaintiffs had agreed, or otherwise settle the case within one day, or Shelter Cove would terminate Travelers' defense. Travelers was prepared to go forward with trial and, although it would not admit complete coverage, it did offer to contribute $180,000 to settle the covered claims. Shelter Cove rejected this offer, terminated the defense and entered into the settlement agreement with Plaintiffs for $1.5 million, in complete disregard of Travelers' position that there was a $1 million aggregate limit on claims for related wrongful acts, which would be diminished by defense costs.[14] Further, according to Plaintiffs' own statement of facts, Shelter Cove and Travelers rejected a settlement offer of $432,306 in 2011, and notes in the claim file from 2011 indicate that Travelers refused to increase its settlement contribution to $900,000 in 2011, due to a lack of exposure under the policy and eroded policy coverage limits in light of the accrued defense costs. Finally, by the time of Plaintiffs' final settlement offer, Travelers had spent approximately $360,000 on Shelter Cove's defense. On this record, no reasonable jury could find that Travelers unreasonably rejected Shelter Cove's request for consent to settle for the full of amount of damages claimed, which exceeded what Travelers believed to be the policy limits, included no apportionment between excluded acts of fraud or covered acts of negligence, and made no recognition of defense costs already incurred. Also, based on these undisputed facts, the Court finds that Travelers' rights were substantially prejudiced by this settlement negotiated between Shelter Cove and the adverse parties. Although Shelter Cove did not admit liability in the settlement agreement, it requested and received a final consent judgment specifically "for negligence" on three counts of the Amended Complaint in the full amount of damages sought by Plaintiffs, despite the fact that the Plaintiffs at all times believed their claims of fraud were well-founded. The consent judgment deprived Travelers of the opportunity to have the facts determined by a jury and damages apportioned between covered and noncovered acts. Accordingly, because Shelter Cove entered into a settlement agreement without Travelers' consent, to the substantial prejudice of Travelers' rights under the policy, the Court finds that Shelter Cove breached the policy and therefore Plaintiffs are not entitled to coverage under its terms, and the suit must be dismissed pursuant to the terms of the policy. *See generally First Am. Title Ins.*, 695 So.2d at 477 (finding on undisputed facts that "the insured's failure to comply with the relevant policy provisions relieved the insurer of its obligations

---

14. Related wrongful acts are treated as a single loss under the policy where they arise out of, are based on, relate to, or are in consequence of, the same facts, circumstances or situations.

under the policy and precluded this action against the carrier as a matter of law").

The Court also rejects Plaintiffs' remaining arguments. Plaintiffs argue that Shelter Cove's failure to obtain consent to settle is excused because Travelers provided an inadequate defense. *See MCO Envtl., Inc. v. Agric. Excess and Surplus Ins. Co.*, 689 So.2d 1114, 1116 (Fla. 3d DCA 1997) (stating if an insured provides a defense, it must provide an adequate defense); *Carrousel Concessions, Inc. v. Fla. Ins. Guar. Ass'n*, 483 So.2d 513, 516 (Fla. 3d DCA 1986) (stating to satisfy the obligation to defend, the insurer must provide an adequate defense and citing cases indicating negligent failure to settle within policy limits is a breach of contract). The only ground asserted by Plaintiffs as proof that Travelers provided an inadequate defense is Travelers' failure to settle within policy limits during the litigation. There is no testimony that Shelter Cove was otherwise unsatisfied with defense counsel's performance. Plaintiffs' statement of facts indicates that Shelter Cove and Travelers both rejected Plaintiff's settlement offer of $432,306, which reflects a joint decision that the offer was not acceptable, not that the defense was inadequate. Claim notes from 2011 indicate Travelers had decided its settlement range was $250,000 to $275,000 and that Travelers was not willing to increase its contribution to $900,000 because of its view of the case and the mounting defense costs that eroded the policy limits, but there is no evidence of another settlement offer being rejected until the final offer discussed above. This evidence is unrefuted, and Plaintiffs have presented no evidence from which a jury could find negligence in the failure to settle during litigation.

The Court also rejects Plaintiffs' argument that Travelers has waived its coverage defenses by violating the Claims Administration Statute, Fla. Stat. § 627.426(2). The statute in relevant part precludes an insurer from denying coverage based on a particular coverage defense unless (1) the insurer gives a written reservation of rights within 30 days of when the insurer knew or should have known of a coverage defense, and (2) the insurer retains independent counsel, mutually agreeable to the parties, within 60 days. Fla. Stat. § 627.426(2)(a), (b)(3). Strict compliance with the statute is required "unless actual notice to the insured of the insurer's position has occurred on a timely basis." *Mid–Continent Cas.Co. v. Basdeo*, 742 F.Supp.2d 1293, 1332 (S.D.Fla.2010) (stating this proposition of law but finding no evidence that the insured in that case actually received a notice of reservation of rights or denial of coverage); *see also Phoenix Ins. Co. v. McCormick*, 542 So.2d 1030, 1031–32 (Fla. 2d DCA 1989) (actual notice was timely and finding strict compliance not required where the insured admits actual notice). *Cf. Country Manors Ass'n, Inc. v. Master Antenna Sys., Inc.*, 534 So.2d 1187 (1988) (failure to strictly comply was admitted).

 Plaintiffs argue that Travelers did not send a timely reservation of rights letter and did not retain independent counsel, mutually agreeable to the parties. *See Am. Empire Surplus Lines Ins. Co. v. Gold Coast Elevator, Inc.*, 701 So.2d 904, 906 (Fla. 4th DCA 1997) (finding no strict compliance with requirement to retain mutually agreeable counsel where the insured was not informed of this right and was not consulted in any way). The record shows, however, that Travelers provided a timely reservation of rights letter in August 2007, advising Shelter Cove regarding the policy exclusions, including fraud and the requirement to obtain consent to settle, which were potentially implicated by the facts alleged in the complaint, and also

advising Shelter Cove that it had retained independent counsel.[15] Although Travelers unilaterally retained the independent counsel, Shelter Cove was consulted. The law firm sent a letter in early September 2007 to Holly Gallopo, Secretary, advising Shelter Cove of its rights as a client and to contact Travelers with any questions concerning the selection of defense counsel. Gallopo accepted the representation on behalf of Shelter Cove on September 11, 2007, by signing the statement of client's rights, to which she also attached a personal note of thanks. Thus, Shelter Cove had timely actual knowledge of the reservation of rights and policy exclusions potentially applicable to the facts and timely accepted the retained counsel. Retained counsel then proceeded to represent Shelter Cove for almost five years without objection. Earheart testified that counsel represented them "perfectly." Nothing in the record supports Plaintiffs' assertion that the retained attorneys were not mutually agreeable, and nothing in the statute requires the reservation of rights to explicitly mention that counsel must be "mutually agreeable." The record confirms that Shelter Cove was consulted and agreed to counsel within the requisite 60 days, and thus, Travelers did not waive its coverage defenses on this ground.

The undisputed record shows that Travelers did not refuse to defend but provided a defense; Shelter Cove failed to obtain consent to settle; and Travelers neither unreasonably refused consent to settle nor provided an inadequate defense.

Accordingly:

1. Defendant's Motion for Summary Judgment (doc. 52) is **GRANTED.** Defen-

dant Travelers Casualty and Surety Company of America owes no obligation for coverage on Shelter Cove's policy.

2. Plaintiffs' Motion for Summary Judgment (doc. 57) is **DENIED.**

3. The Clerk is directed to enter judgment accordingly, tax costs against the Plaintiffs, terminate all pending motions, and close the file.

---

**15.** Any untimeliness concern regarding the second reservation of rights letter is immaterial because the initial reservation of rights letter to Shelter Cove included the relevant defenses and policy provisions providing actu-

al notice to Shelter Cove, and no judgment was entered against the individual defendants who otherwise would have been able to claim that the second letter was untimely as to the claims against them.